IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. VASQUEZ CHIQUIRIN


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

LUIS E. VASQUEZ CHIQUIRIN, APPELLANT.


Filed August 1, 2023.    No. A-23-063.


Appeal from the District Court for Lancaster County: DARLA S. IDEUS, Judge. Affirmed.

Mona Burton, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Matthew Lewis for appellee.


RIEDMANN, BISHOP, and WELCH, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Luis E. Vasquez Chiquirin appeals his convictions and sentences for attempted sex trafficking–gain benefit and first degree sexual assault, entered by the Lancaster County District Court. He claims that his trial counsel was ineffective in failing to communicate with him and in failing to depose certain witnesses and that his sentences were excessive. We affirm.

## II. BACKGROUND

### 1. ATTEMPTED SEX TRAFFICKING–GAIN BENEFIT

Lincoln police officers responded to a welfare check at a Lincoln apartment complex, in which they located two runaway children on October 23, 2020. Officers identified the runaway children as I.S., who was 14 years old, and L.L., who was 15 years old. Officers confirmed that both juveniles had detainers and they were transported to a detention center. Officers identified two men in the apartment with the two juveniles, one of whom was Vasquez Chiquirin.

On November 6, 2020, I.S. disclosed to an investigator that she was sex trafficked by multiple men, including Vasquez Chiquirin. I.S. recounted that the first incident occurred in May. I.S. met Vasquez Chiquirin through a mutual friend at his apartment, where he later offered I.S. methamphetamine. After using the methamphetamine, I.S. recalled four men having sex with her, one after the other, for roughly 2 hours. When she walked from the bedroom to the living room to leave, she saw Vasquez Chiquirin and his roommate handling money. They gave I.S. $80 and said she "earned it."

I.S. returned to the apartment in September 2020 with friends, including L.L. Both girls were trying to avoid police because I.S. had a warrant for her arrest, and L.L. was considered a missing person. Equipped with this knowledge, Vasquez Chiquirin told the juveniles that they could stay at the apartment but would have to have sex with men for money in return. Vasquez Chiquirin would call these arrangements between the girls and the men "plays." Vasquez Chiquirin also threatened to call the police on I.S. and L.L.

Between September and October 2020, Vasquez Chiquirin coordinated multiple "plays" for I.S. and L.L. Both I.S. and L.L. told investigators that Vasquez Chiquirin arranged many of the "plays." I.S. recalled that Vasquez Chiquirin would drive her to different cities in Nebraska, including Omaha, Norfolk, or Crete, to meet men. Although Vasquez Chiquirin did not require an explicit cut from the money I.S. and L.L. made from each "play," I.S. and L.L. stated they both provided money and drugs to Vasquez Chiquirin while they stayed at his apartment. They described feeling obligated and that Vasquez Chiquirin would often ask them for money.

L.L. confirmed I.S.'s version of the events. L.L. also confirmed that it was Vasquez Chiquirin who coordinated most of the "plays." Investigators were able to corroborate I.S.'s and L.L.'s stories through another woman, H.G., who had lived in the apartment with them and dated Vasquez Chiquirin's roommate. H.G. also told officers both Vasquez Chiquirin and her former boyfriend, had made money from setting up "plays" for I.S. and L.L. A later review of cellular communications confirmed each woman's story.

## 2. FIRST DEGREE SEXUAL ASSAULT

On December 4, 2020, investigators responded to a call for assistance in locating a person of interest who was involved in the sex trafficking operation. M.G., a juvenile who was 15 years old at the time, was found with the person of interest. M.G. had recently cut off her ankle monitor and stolen her foster father's vehicle, so she was held on her juvenile detainer.

M.G. later disclosed that one of the men found in the vehicle had arranged for her to have sex with Vasquez Chiquirin. She reported that Vasquez Chiquirin had sex with her so that he could determine "her worth and how much to charge men for her." Vasquez Chiquirin later paid the man who was trafficking M.G.

An arrest warrant was later issued for Vasquez Chiquirin. He was arrested on December 21, 2020. He was originally charged with labor or sex trafficking of a minor.

## 3. PLEA AGREEMENT

On November 14, 2022, the district court held a plea hearing at which Vasquez Chiquirin pled no contest. The plea agreement provided that in return for Vasquez Chiquirin's plea of guilty

or no contest, the State would amend his charge of labor or sex trafficking a minor to one count of attempted sex trafficking–gain benefit and one count of first degree sexual assault.

The district court advised Vasquez Chiquirin of his rights before accepting his plea. The district court found Vasquez Chiquirin competent and Vasquez Chiquirin affirmed that he understood a plea of no contest meant he gave up his right to put on a defense to the charges. The district court informed Vasquez Chiquirin of the constitutional rights he was waiving and ensured that Vasquez Chiquirin was advised of the immigration consequences of his plea.

The district court also asked Vasquez Chiquirin about his trial counsel's performance. Vasquez Chiquirin advised the court that he had told his counsel everything there was to know about the situation, there was nothing that could help him that he had not told his counsel, that he was satisfied with the job counsel had done, and there was nothing he had asked counsel to do that he failed to do. The district court ultimately accepted Vasquez Chiquirin's plea.

### 4. SENTENCING

On January 5, 2023, the district court sentenced Vasquez Chiquirin to 3 to 3 years' imprisonment for attempted sex trafficking–gain benefit and 25 to 35 years' imprisonment for first degree sexual assault. Each sentence was ordered to run consecutive to each other and any other sentence Vasquez Chiquirin was serving. Prior to delivering the sentence, the district court explained that it reviewed the presentence investigation report (PSR). It also considered each of the factors required by law.

The district court specifically noted Vasquez Chiquirin's lack of remorse and his refusal to take responsibility for his actions. It emphasized that Vasquez Chiquirin's pro-criminal attitude, thoughts, and beliefs showed a lack of remorse, no empathy for his victims, and a pattern of victimizing young children for personal and financial gains. Furthermore, the district court refuted Vasquez Chiquirin's claim that he believed M.G. to be 18 years old and did not know she was 15 years old. The district court concluded by stating that without incarceration, Vasquez Chiquirin posed a danger to the community and imprisonment was necessary for the protection of the public. Vasquez Chiquirin appeals.

## III. ASSIGNMENTS OF ERROR

Vasquez Chiquirin assigns two errors: (1) his trial counsel was ineffective because he failed to adequately communicate with him and failed to depose the State's witnesses, and (2) the district court abused its discretion by imposing an excessive sentence.

## IV. STANDARD OF REVIEW

When a defendant's trial counsel is different from their counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Wheeler*, 314 Neb. 282, 989 N.W.2d 728 (2023). The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id*. The determining factor is whether the record is sufficient to adequately review the question. *Id*.

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022).

## V. ANALYSIS

### 1. INEFFECTIVE ASSISTANCE OF COUNSEL

#### (a) General Principles

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that their counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. See *State v. Thomas*, 311 Neb. 989, 977 N.W.2d 258 (2022). To show counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. When a conviction is based upon a plea of no contest, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading no contest. *Id*.

When, as in this case, a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *Id*. Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id*. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id*.

#### (b) Trial Counsel Failed to Adequately Communicate

Vasquez Chiquirin assigns his trial counsel was ineffective for failing to communicate and adequately meet with him. He argues that his counsel pushed him to plead before receiving discovery and did not sufficiently meet with him.

Vasquez Chiquirin's assignment is without merit because it does not contain sufficient allegations of deficient performance. In *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017), a defendant assigned that his counsel failed to adequately communicate with him to prepare a defense and to explore his options. He contended his counsel was ineffective because he "only met with him a few times" and "did not engage in meaningful conversations about the State's evidence and what evidence [the defendant] had to rebut the charges." *Id*. at 200, 903 N.W.2d at 257. The Nebraska Supreme Court held the defendant's claims were not sufficient allegations of deficient performance. *State v. Mora, supra*. It also rejected as conclusory the defendant's claim that due to the lack of communication, he was unable to make an informed decision about whether to accept a plea, proceed to trial, or testify. *Id*.

Vasquez Chiquirin's claims are similar to those made in *Mora*, as he assigned "counsel was ineffective for failing to communicate and adequately meet with him." Brief for appellant at 5. He argued counsel "pushed" him to plead even before receiving discovery or before his co-defendants pled. *Id*. at 11. He asserted that due to the lack of communication, he lacked the necessary information to inform his decision to plead or proceed with trial. We find Vasquez Chiquirin's claims synonymous with the claims in *Mora*; therefore, we reach the same conclusion that Vasquez Chiquirin's claims are insufficient conclusory allegations of deficient performance.

### (c) Trial Counsel Failed to Depose Witnesses

Vasquez Chiquirin also assigns his trial counsel was ineffective for failing to depose the State's witnesses, including the victims, to ascertain their credibility regarding his involvement in the trafficking activity. He argues that trial counsel ignored his requests for depositions, which could have been used to attack the credibility of witnesses.

The record refutes Vasquez Chiquirin's claim. The district court asked Vasquez Chiquirin a series of questions regarding his trial counsel's performance during the plea hearing. Specifically, the district court asked Vasquez Chiquirin "is there anything you asked [your trial counsel] to do that he failed or refused to do?" Vasquez Chiquirin responded "no." Because Vasquez Chiquirin admitted that his trial counsel did not neglect or refuse to do anything that he asked, the record refutes this allegation of ineffective assistance of counsel. See *State v. Chairez*, 302 Neb. 731, 924 N.W.2d 725 (2019).

In *State v. Chairez, supra*, the defendant assigned that his trial counsel was ineffective for failing to depose witnesses. However, during the plea colloquy, the defendant stated there was nothing the defendant asked his counsel to do that he failed or refused to do. *Id*. The Court determined that

> [b]ased on his admission that counsel did not neglect or refuse to do anything that [defendant] asked of him, we must find that [defendant's] counsel was not ineffective, because based on [defendant's] clear and unchallenged admissions in the record, his counsel's performance was not deficient as a matter of law.

*Id*. at 739, 924 N.W.2d at 731.

Likewise, based on Vasquez Chiquirin's admission that counsel did not fail or refuse to do anything that Vasquez Chiquirin asked him to do, his counsel's performance was not deficient as a matter of law.

### 2. EXCESSIVE SENTENCE

Vasquez Chiquirin was convicted in count I of attempted sex trafficking–gain benefit and in count II of first degree sexual assault. Attempted sex trafficking–gain benefit is a Class IIIA felony, which carries no minimum sentence of imprisonment and a maximum of 3 years' imprisonment. Neb. Rev. Stat. §§ 28-201(4)(c) and 28-831(3) (Cum. Supp. 2022); Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). In count II, Vasquez Chiquirin was convicted of first degree sexual assault, a Class II felony, which carries a minimum of 1 year imprisonment and a maximum of 50 years' imprisonment. Neb. Rev. Stat. § 28-319(1)(c) (Reissue 2016); § 28-105. Vasquez Chiquirin was sentenced for a period of not less than 3 years, nor more than 3 years' imprisonment for count

I and 25 to 35 years' imprisonment for count II. Since his sentences fall within the statutory guidelines, we review for an abuse of discretion.

An abuse of discretion in imposing a sentence occurs when a sentencing court's reasons or rulings are clearly untenable and unfairly deprive the litigant of a substantial right and just result. *State v. Artis*, 296 Neb. 172, 893 N.W.2d 421 (2017).

When imposing a sentence, a sentencing judge should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Vasquez Chiquirin was 34 years old at the time of sentencing. He did not graduate high school and has a ninth-grade education. He did not have a significant criminal history prior to the current charges; however, his limited criminal record results from Vasquez Chiquirin illegally migrating to the United States from Guatemala. He relied on an interpreter for the duration of the proceedings.

Vasquez Chiquirin was subjected to multiple assessments as a part of his PSR interview. The PSR placed Vasquez Chiquirin in the high-risk level for recidivism. He was placed in the moderate-low risk range for the Vermont Assessment of Sex Offender Risk-2 (VASOR-2). He scored in the low-risk range for the Sex Offender Treatment Intervention and Progress Scale (SOTIPS) but was assessed in the very considerable need for improvement on the scale of sexual offense responsibility and stage of change. Vasquez Chiquirin scored a combined static and dynamic risk of low when considering both the VASOR-2 and the SOTIPS. He also responded to 5 of 17 potential items in his mental health screen, which indicate a need for further intervention and mental health support.

Vasquez Chiquirin minimizes his involvement in the sex trafficking operation, and claims he believed M.G. to be 18 years old when they had sex. Because of his failure to take responsibility for his actions, there is little to explain his motivation for these offenses. However, there are text messages that indicate he was happy with how profitable his business was, at one point texting a co-defendant, "This business is good," and "Let's see the money. How much is our cut?" Vasquez Chiquirin's motivation to profit from I.S. and L.L. is further underscored by the numerous text messages he sent to I.S. and L.L. to arrange "plays" for them.

Vasquez Chiquirin was convicted of two serious crimes that involve taking advantage of and profiting from juvenile girls by selling them for sex to men. He was charged with first degree sexual assault after having sex with a 15-year-old girl to gauge "how much he could charge for her." He also used coercive techniques to ensure the juvenile girls would work for him, such as threatening to call the police on them and providing them methamphetamine to develop an addiction. The circumstances that led to the trafficking of I.S. and L.L. underscore the serious nature of Vasquez Chiquirin's convictions.

Vasquez Chiquirin argues the district court abused its discretion in its sentences because it did not adequately consider and weigh the necessary factors required by law. He claims that he

has led a lawful life prior to this case and scored a low risk on the combined sexual offender risk screen, so the district court should have provided a lesser sentence.

The district court did not abuse its discretion in sentencing Vasquez Chiquirin. It stated on the record that it considered all the statutorily required factors, and it is under no duty to make specific findings of fact pertaining to each of the sentencing factors and the weight given to them. See *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021). Although the sexual offender risk screen scored Vasquez Chiquirin in the low risk to reoffend, it still assessed him to have a very considerable need for improvement on the scale of sexual offense responsibility and state of change. These areas of improvement emphasize the issues in the present case: Vasquez Chiquirin's failure to take responsibility for sexually assaulting M.G. and the minimization of his actions in trafficking I.S. and L.L. Therefore, Vasquez Chiquirin's argument fails.

## VI. CONCLUSION

Vasquez Chiquirin's ineffective assistance of counsel arguments fail. His first claim was insufficiently pled, and his second claim is refuted by the record. Furthermore, the district court did not abuse its discretion in its sentences. Accordingly, we affirm his convictions and sentences.

AFFIRMED.