IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. OTTENS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

TRENTON A. OTTENS, APPELLANT.

Filed December 19, 2023.    No. A-22-595.

Appeal from the District Court for Lancaster County: ROBERT R. OTTE, Judge. Affirmed.

Abby Osborn, of Shiffermiller Law Office, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Austin N. Relph for appellee.

RIEDMANN, BISHOP, and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Trenton A. Ottens appeals from his jury convictions for possession of a controlled substance, resisting arrest, and child abuse, and the sentences imposed thereon. For the reasons stated herein, we affirm.

## II. STATEMENT OF FACTS

### 1. BACKGROUND

On May 13, 2020, the Lancaster/Lincoln County Narcotics Task Force (LLCNTF) received information from a confidential informant (CI) that Ottens and his girlfriend, Dymond Casillas, were transporting a fourth of a pound of methamphetamine from Denver, Colorado, to Lincoln, Nebraska, to be delivered to rooms 102, 104, and 106 at the Oasis Inn and Suites, which rooms had been converted to a single large room. We will refer to the single large room, encompassing rooms 102, 104, and 106, as "room 104." The CI also indicated that Ottens would be driving a

- 1 -

silver Pontiac Grand Prix with Nebraska license plate number WFW672. The following day, Investigator Adam Strode relayed this information to the Nebraska State Patrol so that the State Patrol could attempt to locate the vehicle.

About an hour after receiving the message, Nebraska State Trooper Bryce Lingrin spotted a vehicle traveling at a high rate of speed towards Lincoln that substantially matched the aforementioned description, although it was missing license plates. After Trooper Lingrin attempted to stop the vehicle, the vehicle fled and a high-speed chase ensued. During this pursuit, Trooper Lingrin observed four individuals inside the vehicle. He described the driver as a white male wearing a baseball cap and described one of the backseat passengers as a female with bright red hair. He was unable to identify the other occupants because they had pulled hoods over their heads. Trooper Lingrin also observed damage to the back bumper of the vehicle. After pursuing the vehicle for a few minutes, Trooper Lingrin terminated the pursuit due to safety concerns after the vehicle ran a red light at a high rate of speed. Trooper Lingrin informed Investigator Strode that he "had a silver Grand Prix take off from [him] and [he] believe[d] that was the vehicle [Strode] was looking for."

After receiving information from Trooper Lingrin about the pursuit, LLCNTF Investigators Strode, Christopher Eirich, Matthew Lesiak, and Colby Dahlke began surveilling the Oasis Inn and Suites. However, after realizing that there had been a lapse in the surveillance, Investigator Eirich drove through the parking lot looking for Ottens' vehicle. Investigator Eirich located Ottens and two other individuals in the hotel's parking lot standing near a Grand Prix with license plates matching the information provided by the CI. The investigators, who believed that Ottens had recently been involved in a high-speed chase and having information that Ottens carried a firearm, approached Ottens, identified themselves as police, and ordered Ottens to "get on the ground." Ottens initially took four to five steps in the opposite direction, as if he intended to run, but he ultimately complied with the command. Investigator Eirich placed Ottens in handcuffs and stood him up in order to perform a pat-down search for weapons.

At this time, about 20 to 30 bystanders formed a half-circle around the investigators. According to the investigators, Ottens was encouraging the bystanders to intervene, and although disputed by Ottens, Ottens began violently resisting arrest. Ottens' mother and girlfriend attempted to intervene and were eventually detained. Because investigators were outnumbered and the situation was escalating, the investigators requested additional assistance from local law enforcement. In order to secure the scene, Investigator Eirich eventually took Ottens to the ground and Investigator Strode applied a dry stun with his taser. Thereafter, Investigator Eirich performed a search incident to arrest during which he found a baggie with a half-gram of cocaine and $2,000 in cash on Ottens' person. Officers also observed, in plain view, marijuana shake in the backseat of the Grand Prix. During a dog sniff, which was performed on the vehicles belonging to Casillas and Ottens, the drug dog alerted on a black Pontiac Firebird. A marijuana blunt was located on the outside of the Firebird near the windshield wiper, but no other narcotics were located inside that vehicle.

About 20 uniformed officers, including Trooper Lingrin, eventually arrived at the Oasis Inn in response to the request for assistance. Trooper Lingrin spoke with Investigators Eirich and Strode about his earlier pursuit of the Grand Prix. During that conversation, Trooper Lingrin

identified the Grand Prix in the parking lot as the vehicle that he had pursued and identified Ottens' girlfriend as the woman he believed he had observed as a backseat occupant.

Investigators then went to room 104 to contact the occupant. The occupant turned out to be Ottens' brother, who was watching Ottens' two children and two dogs. After speaking with Ottens' brother, Investigator Eirich believed that there may have been marijuana in the room. After Ottens' brother took the children and dogs outside, investigators performed a protective sweep of the room. During the protective sweep, investigators observed some rubber containers containing THC wax and a long rifle situated next to a wall. They also observed the poor living conditions of the room and noted that there were no other individuals in the room.

After the completion of the protective sweep, Investigator Eirich prepared an affidavit and obtained a search warrant for the hotel room. During the search, law enforcement seized marijuana, THC wax, and methamphetamine pipes with residue. Investigators observed that the room was filthy, in complete disarray, had a strong odor of urine and feces, and had dog feces in several places.

Ottens was transported to the police station. During an interview, Ottens made statements that he had gone to Colorado to buy marijuana, that the substance in his pocket was probably cocaine, and that although he primarily used marijuana, he had used methamphetamine approximately 2 weeks earlier. He indicated that his girlfriend resided at the Oasis Inn, that he frequented the Oasis Inn but did not have an address, and that methamphetamine pipes might be located in a bedside drawer. Later, it was discovered that the Grand Prix that Trooper Lingren chased was not the same Grand Prix located at the Oasis Inn.

## 2. CHARGES AND PRETRIAL MOTIONS

In October 2020, the State charged Ottens with possession of cocaine, possession of methamphetamine, resisting arrest, and child abuse. Ottens filed several pretrial motions including multiple motions to suppress and a *Franks v. Delaware*, 438 U.S. 154 (1978), motion challenging the evidence obtained from the pre-warrant protective sweep of the hotel room; the evidence seized from the hotel room pursuant to the search warrant; the affidavit in support of the search warrant as not supporting a finding of probable cause because it contained material omissions, deliberate falsehoods, and material misstatements of fact; and the evidence obtained as a result of the search incident to his arrest. Following the hearings, the district court overruled all of Ottens' pretrial motions.

## 3. JURY TRIAL

During the trial, testimony was adduced from witnesses including Investigators Eirich, Strode, Lesiak, and Dahlke; Trooper Lingren; Sergeant Jon Kossow; and Dymond Casillas. The facts adduced at trial are consistent with the facts previously set forth. The jury convicted Ottens of possession of cocaine, resisting arrest, and child abuse, but found him not guilty of possession of methamphetamine.

### 4. MOTION FOR NEW TRIAL

Ottens timely filed a motion for a new trial for his conviction for resisting arrest based on juror misconduct. He alleged that, following his conviction, a juror emailed court staff indicating that the juror may have been under undue pressure to convict Ottens for resisting arrest. The juror further indicated that her vote now burdened her conscience. The district court overruled the motion for a new trial.

### 5. SENTENCING

The district court sentenced Ottens to 12 months' imprisonment followed by 12 months of post-release supervision for possession of cocaine, and 6 months' imprisonment each for resisting arrest and child abuse, all of which were ordered to be served consecutively. Ottens has timely appealed to this court.

## III. ASSIGNMENTS OF ERROR

Ottens assigns, renumbered and restated, that: (1) the district court erred in failing to sustain his motions to suppress evidence obtained from (a) the search incident to arrest and (b) the warrantless sweep of the hotel room; (2) the district court erred in overruling his *Franks* Motion because (a) the affidavit in support of the search of the hotel room lacked probable cause after the redacted portions were removed from the affidavit and (b) the statements contained in the affidavit were full of exaggerations and disregarded the truth; (3) the district court erred in failing to hold an evidentiary hearing on, and failing to sustain, his motion for a new trial; and (4) and that his trial counsel was ineffective in various respects.

## IV. STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Drake*, 311 Neb. 219, 971 N.W.2d 759 (2022). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *Id*.

We review the trial court's findings as to whether the affidavit supporting the warrant contained falsehoods or omissions and whether those were made intentionally or with reckless disregard for the truth for clear error. *State v. Short*, 310 Neb. 81, 964 N.W.2d 272 (2021). We review de novo the determination that any alleged falsehoods or omissions were not necessary to the probable cause finding. *Id.*

A de novo standard of review should apply when an appellate court is reviewing a trial court's dismissal of a motion for a new trial under Neb. Rev. Stat. § 29-2102(2) (Reissue 2016) without conducting an evidentiary hearing. *State v. Cross*, 297 Neb. 154, 900 N.W.2d 1 (2017). We will continue to apply the abuse of discretion standard of review to appeals from motions for new trial denied after an evidentiary hearing. *Id.* In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and that unless an abuse of discretion is shown, the

trial court's determination will not be disturbed. *State v. Avina-Murillo*, 301 Neb. 185, 917 N.W.2d 865 (2018).

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Drake, supra*. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. ISSUES RELATED TO MOTIONS TO SUPPRESS

Ottens first assigns that the district court erred in failing to sustain his motions to suppress relating to the evidence obtained (a) during the search incident to his arrest and (b) during the warrantless sweep of the hotel room. Before addressing Ottens' claims, we first review the law related to searches and seizures.

The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable search and seizure. *State v. Perry*, 292 Neb. 708, 874 N.W.2d 36 (2016). Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions, which must be strictly confined by their justifications. *Id.* The warrantless search exceptions Nebraska has recognized include: (1) searches undertaken with consent, (2) searches under exigent circumstances, (3) inventory searches, (4) searches of evidence in plain view, and (5) searches incident to a valid arrest. *State v. Saitta*, 306 Neb. 499, 945 N.W.2d 888 (2020). We have also recognized that among the established exceptions to the warrant requirement is the automobile exception. *Id*.

### (a) Search Incident to Arrest

Ottens first argues that the evidence obtained during the search incident to his arrest should have been suppressed because the arrest was unlawful as it was not supported by probable cause.

In *State v. Perry*, 292 Neb. at 713-14, 874 N.W.2d at 41, the Nebraska Supreme Court stated that "[a] valid arrest based on probable cause that a person is engaged in criminal activity is allowed by the Fourth Amendment, and if an arrest is made based upon probable cause, a full search of the person may be made incident to that arrest."

Recognizing the right to search pursuant to a valid arrest, Ottens challenges the validity of his arrest arguing that the police lacked probable cause to arrest him. In support of his theory, Ottens makes two separate arguments. First, he argues that during the applicable suppression hearing, the State failed to carry the burden to establish that law enforcement had probable cause to arrest him and that, on appeal, this court should focus solely on the evidence adduced at that particular hearing in determining whether the State met its burden. Second, Ottens suggests that this court should focus our inquiry on his initial detention by law enforcement in the parking lot

and, because probable cause was lacking to detain or arrest him, the district court erred in failing to grant his motion to suppress.

As to the scope of the evidence to consider here, the matter involves one of settled law. As the Nebraska Supreme Court reiterated in *State v. Jennings*, 305 Neb. 809, 819, 942 N.W.2d 753, 763 (2020), "[w]hen a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from trial and from the hearings on the motion to suppress." Therefore, we consider all of the evidence from the suppression hearing and the trial in determining whether probable cause existed to arrest Ottens. In so doing, we recognize that Ottens takes exception to police first confronting him in the parking lot, ordering him to the ground, and attempting to handcuff him on the basis of the information that they had obtained up to that point in time.

A similar issue was presented in *State v. Wells*, 290 Neb. 186, 859 N.W.2d 316 (2015). In analyzing the validity of an arrest and search in response to resisting a prior detention and allegedly unconstitutional search, the Nebraska Supreme Court stated:

> In the case at bar, after [the defendant] allegedly kicked [the officer], [the officer] had probable cause to arrest [the defendant] for assault of an officer in the third degree. When [the defendant] was subdued and held to the ground by [the officer] putting his knee into [the defendant's] back, the initial detention was transformed into a custodial arrest. This arrest was valid regardless of whether [the officer's] prior search was constitutional. Any search of [the defendant's] person that occurred after that time, including [the officer's] search of [the defendant's] pockets from which [the officer] ultimately retrieved the baggie, would fall under the search incident to a lawful arrest exception to the warrant requirement. Therefore, even if [the officer's] initial search was unlawful, the evidence need not be suppressed under the exclusionary rule, because it can be justified under another exception to the warrant requirement.

*Id*., at 203, 859 N.W.2d at 331.

As the Nebraska Supreme Court noted in *Wells*, this rule applies regardless of whether the resistance is to an unlawful arrest or an unlawful detention and search. Applying this rationale to the case at bar, we note that there was significant evidence that Ottens resisted officers' attempts to detain him which actions led to Ottens being charged with, and ultimately convicted of, resisting arrest. Ottens' actions in resisting arrest independently provided police with probable cause to arrest him. We find that regardless of whether the officer's initial encounter with Ottens is characterized as a detention or attempt to arrest, Ottens' conduct in response to that encounter entitled the police officer to arrest Ottens and search him incident to that arrest. As such, the district court did not err in denying Ottens' motion to suppress the evidence obtained during the search of his person incident to that arrest.

### (b) Protective Sweep of Hotel Room

Ottens next contends that the district court erred in failing to suppress evidence obtained during the warrantless sweep of the hotel room. He argues that the information obtained during

the illegal sweep of the room was utilized in the affidavit to obtain a search warrant and, without that information, probable cause did not exist to issue a warrant to search that room.

In *State v. Eberly*, 271 Neb. 893, 899-900, 716 N.W.2d 671, 677 (2006), the Nebraska Supreme Court stated:

> A police officer who has obtained neither an arrest warrant nor a search warrant cannot make a nonconsensual and warrantless entry into a suspect's home in the absence of exigent circumstances.
>
> Exigency determinations are generally fact intensive. But several commonly recognized categories include: "(1) 'hot pursuit' of a fleeing felon; (2) threatened destruction of evidence inside a residence before a warrant can be obtained; (3) a risk that the suspect may escape from the residence undetected; or (4) a threat, posed by a suspect, to the lives or safety of the public, the police officers, or to [an occupant]." This fourth circumstance is also called the "emergency doctrine."

(Citations omitted.)

Here, in overruling the motion to suppress, the district court noted that at the time of Ottens' arrest, the scene was chaotic and dangerous due to a crowd of people yelling and approaching the officers. After Ottens' arrest, officers contacted Ottens' brother, who removed Ottens' two children and two dogs from the hotel room. The district court stated "I think the officers had an obligation to themselves to secure that whole area. And I think that this was part of that. I think they had the right to go in and sweep that room."

We construe the district court's order as finding that exigent circumstances justified the sweep of the hotel room prior to issuance of the search warrant. Ottens argues that exigent circumstances did not justify any warrantless search. The State disagrees, but posits that, even if the protective sweep was unlawful, the inevitable discovery doctrine applies because the police properly uncovered the same evidence after obtaining a valid warrant to search the hotel room. Under the inevitable discovery doctrine, evidence obtained without a valid warrant is nonetheless admissible if the State shows by a preponderance of the evidence that the police would have obtained the disputed evidence by proper police investigation entirely independent of the illegal investigative conduct. *State v. Nolt*, 298 Neb. 910, 906 N.W.2d 309 (2018).

In this case, police eventually obtained a warrant to search the hotel room that Ottens claims had been improperly searched prior to obtaining that warrant. Ottens specifically argues that the affidavit in support of the search warrant would have been insufficient to support a finding of probable cause to search the hotel room if the description of evidence found during the protective sweep of the room was excluded from the affidavit.

In *State v. Beeken*, 7 Neb. App. 438, 585 N.W.2d 865 (1998), this court discussed the effect of an alleged illegal entry on the validity of a search warrant where the affidavit contained information about observations made during the alleged illegal entry. In analyzing the impact, we quoted *U.S. v. Restrepo,* 966 F.2d 964 (5th Cir. 1992), *cert. denied* 506 U.S. 1049, 113 S. Ct. 968, 122 L. Ed. 2d 124 (1993), stating that, "in all such cases, the trial court 'should consider whether the warrant affidavit, once purged of tainted facts and conclusions, contains sufficient evidence to

constitute probable cause for issuance of the warrant.'" *State v. Beeken*, 7 Neb. App. at 452, 585 N.W.2d at 874.

At this point, Ottens argues that the description of the evidence obtained during the protective sweep is only one statement among several statements included in the affidavit for the search warrant which statements should not have been considered in determining whether the affidavit in support of the search warrant established probable cause. Ottens claims that the police either knowingly and intentionally, or with reckless disregard for the truth, included false or misleading statements or omitted information material to a probable cause finding in the affidavit for the search warrant of the hotel room. As such, we will consider that argument in connection with Ottens' next assignment of error, as we need to determine whether the warrant was valid in order to determine whether police would have inevitably discovered some of the evidence first observed during the protective sweep.

## 2. *FRANKS* MOTION

Ottens next assigns that the district court erred in overruling his *Franks v. Delaware*, 438 U.S. 154 (1978), motion. He argues that after striking the false or improperly obtained statements contained in the affidavit in support of the search warrant, the affidavit was insufficient to support a finding of probable cause to search the hotel room. He further argues that the affidavit was so full of exaggerations and disregard for the truth, that the affidavit should have been found lacking probable cause.

In *State v. Short*, 310 Neb. 81, 124-26, 964 N.W.2d 272, 307-08 (2021), the Nebraska Supreme Court stated:

In *Franks v. Delaware* [438 U.S. 154 (1978)], the U.S. Supreme Court explained, "'[W]hen the Fourth Amendment demands a factual showing sufficient to comprise "probable cause," the obvious assumption is that there will be a truthful showing.'" The Court clarified this "does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct." Rather, it recognized probable cause may be founded upon hearsay as well as "upon information within the affiant's own knowledge that sometimes must be garnered hastily." It concluded that "surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true."

In contrast, it would be "unthinkable" to allow a warrant to stand beyond impeachment if it were revealed after the fact to contain a "deliberately or reckless false statement." Thus, while there is a presumption of validity with respect to the affidavit supporting the search warrant, that presumption may be overcome and a search warrant may be invalidated if the defendant proves the affiant officer "'knowingly and intentionally, or with reckless disregard for the truth,'" included in the affidavit false or misleading statements that were necessary, or "material," to establishing probable cause.

Courts have extended the *Franks* rationale to omissions in warrant affidavits of material information. Omissions in an affidavit used to obtain a search warrant are considered to be misleading when the facts contained in the omitted material tend to

weaken or damage the inferences which can logically be drawn from the facts as stated in the affidavit.

If the defendant successfully proves, by a preponderance of the evidence, that the police knowingly and intentionally, or with reckless disregard for the truth, included a false or misleading statement or omitted information material to a probable cause finding, then the court examines whether the evidence obtained from the warrant and search was fruit of the poisonous tree. In an "'excise and re-examine' corollary to the independent source rule," the trial court reexamines the affidavit after deleting the false or misleading statement and including the omitted information, and it determines whether, viewed under the totality of the circumstances, it still establishes probable cause. If it does not, then Franks requires that the search warrant be voided and the fruits of the search excluded.

Mere negligence in preparing the affidavit will not lead to suppression, as the purpose of the exclusionary rule is to deter misconduct. We review the trial court's findings as to whether the affidavit supporting the warrant contained falsehoods or omissions and whether those were made intentionally or with reckless disregard for the truth for clear error. We review de novo the determination that any alleged falsehoods or omissions were not necessary to the probable cause finding.

Ottens specifically argued in his *Franks* motion that the affidavit in support of the search warrant failed to contain information governing the CI's reliability and contained false, misleading, and/or omitted information including that: (1) photos of the Grand Prix were obtained from Ottens' Facebook page and forwarded to the Nebraska State Patrol; (2) Trooper Lingrin observed a Grand Prix matching the CI's description and the photos; (3) Trooper Lingrin positively identified Casillas as a passenger in the vehicle that he pursued; (4) the Grand Prix located at the Oasis Inn was the same vehicle that Trooper Lingrin had unsuccessfully pursued; (5) the vehicle involved in the pursuit exceeded speeds of 100 miles per hour; (6) Trooper Lingrin identified specific body damage on the vehicle he was pursuing and which damage was documented on his cruiser camera video; (7) Ottens resisted arrest; (8) Ottens was observed to be standing outside of the Oasis Inn near the vehicle; (9) the Oasis Inn's on-duty manager confirmed that Ottens was known to live with his girlfriend in room number 104; (10) Ottens' brother took custody of Ottens' dogs and children while Ottens was being detained; (11) that Ottens' brother stated that, while inside the hotel room, he observed what he believed were several marijuana dispensary containers with marijuana leaves printed on them; and (12) a police service dog sniff of Ottens' Grand Prix and the Pontiac Firebird was completed with the dog positively indicating to the odor of narcotics in the Firebird.

Ottens argues that the affidavit's collective inaccurate information was intentionally false or made with reckless disregard for the truth, and that when the inaccurate allegations are excised, the remaining allegations contained in the affidavit were insufficient to constitute probable cause and the court erred in overruling his *Franks v. Delaware*, 438 U.S. 154 (1978), challenge. We address each such argument below.

First, Ottens argues that because the affidavit in support of the search warrant did not contain information to demonstrate the CI's reliability, that language should have been stricken.

We agree that the warrant here was issued on the strength of information provided by the CI. As the Nebraska Supreme Court set forth in *State v. Edmonson*, 257 Neb. 468, 476-77, 598 N.W.2d 450, 458 (1999):

> When a search warrant is obtained on the strength of an informant's information, the affidavit in support of the issuance of the warrant must (1) set forth facts demonstrating the basis of the informant's knowledge of criminal activity and (2) establish the informant's credibility, or the informant's credibility must be established in the affidavit through a police officer's independent investigation. Among the ways in which the reliability of an informant may be established is by showing in the affidavit to obtain a search warrant that (1) the informant has given reliable information to police officers in the past, (2) the informant is a citizen informant, (3) the informant has made a statement that is against his or her penal interest, and (4) a police officer's independent investigation establishes the informant's reliability or the reliability of the information the informant has given. An affidavit in support of the issuance of a search warrant must *affirmatively* set forth the circumstances from which the status of the informant can reasonably be inferred.

(Citations omitted.) (Emphasis in original.) Here, the affidavit included an allegation of the credibility of the CI based upon reliable information provided to law enforcement in the past.

During the hearing on the *Franks* Motion, defense counsel specifically stated that he was not challenging the reliability of the CI's statements and that he would be willing to stipulate that the CI's statements were reliable. Additionally, counsel withdrew his Neb. Rev. Stat. § 27-510 (Reissue 2016) motion contesting the credibility of the CI. Because we find that Ottens waived any challenge to the CI's credibility and, in fact, stipulated that the CI's statements were reliable, we reject his challenge on appeal to the sufficiency of the information to support the CI's credibility.

Ottens next argues that the affidavit contained multiple false statements which should be construed as knowing or intentionally false statements or statements made with reckless disregard for their truth which were material to the probable cause finding. We summarize those contentions, and evidence adduced in response thereto.

First, Ottens contends that the affidavit provided that Facebook photos of the Grand Prix were forwarded to the Nebraska State Patrol and that Trooper Lingrin observed a vehicle matching the description and photographs, although the testimony at trial indicated that no Facebook photographs were sent to the Nebraska State Patrol. In response, Investigator Eirich testified that "it was my understanding at the time of authoring this that that had happened. And I had not asked specifically about the picture. We . . . just had [a] general conversation that he had forwarded the information."

Second, Ottens argues that the affidavit stated that Trooper Lingrin positively identified Casillas as the passenger in the vehicle that Trooper Lingrin had unsuccessfully pursued in contrast to Trooper Lingrin's trial testimony that he did not make a positive identification because he did not see her face during the pursuit. Trooper Lingrin testified that he told investigators at the Oasis Inn something to the effect of "I know that's her, but I can't prove it."

Third, Ottens takes issue with the statements in the affidavit that indicated that the vehicle observed at the Oasis Inn was the same vehicle that Trooper Lingrin had pursued earlier that day and that Trooper Lingrin identified specific bumper damage to the vehicle that would be depicted on the cruiser footage. The evidence adduced during the suppression hearing and at trial revealed that upon closer inspection of Trooper Lingrin's cruiser footage from the pursuit, the vehicles were not the same; that it was later determined that the two vehicles were different; and that Investigator Eirich had not viewed the video footage prior to drafting the affidavit.

Fourth, Ottens argues that the affidavit incorrectly stated that the vehicle involved in the pursuit exceeded speeds of 100 m.p.h despite an audio recording which did not indicate speeds over 99 m.p.h. Investigator Eirich testified that when drafting the affidavit, he relied on information from Investigator Strode, who had listened to the call and had communicated with Trooper Lingrin after the pursuit. Investigator Eirich stated that Strode informed him that the vehicle was traveling at a "speed upwards of 100 miles per hour or more."

Fifth, Ottens argues that the affidavit falsely stated that he resisted arrest when investigators contacted him in the Oasis Inn's parking lot despite witness testimony to the contrary. In response, officers testified that Ottens resisted arrest. Ottens was eventually convicted of this charge at trial.

Sixth, Ottens argues that the affidavit for the search warrant falsely claimed he was standing outside of the Oasis Inn near the Grand Prix when he was actually near a completely different vehicle and was at least four stalls away on the other side of a dark-colored pickup.

Seventh, Ottens argues that the affidavit falsely stated that Julie Pinkston was the on-duty manager of the Oasis Inn and had indicated that Ottens lived in rooms 102, 104, and 106 with his girlfriend. Ottens argues that Pinkston was not the on-duty manager of the Oasis Inn at that time and had no memory of the conversation with investigators. At the *Franks* hearing, Pinkston testified that although she had a "short-term memory disability," she remembered law enforcement being there that night, but that she was not on duty and she did not remember speaking to officers that night.

Eighth, Ottens argues that the affidavit falsely stated that his brother arrived to take custody of the children and the dogs while Ottens and his girlfriend were being detained, when in fact his brother was inside the hotel room playing video games with the children and removed the children and the dogs when law enforcement knocked on the door.

Ninth, Ottens argues that the affidavit incorrectly claimed that his brother informed law enforcement that he believed that there were several marijuana dispensary containers with marijuana leaves printed on them in the room. Ottens' brother testified that an officer asked him if he had seen anything in the room and he stated, "I told him that I seen tubes" but that he never told officers that he saw marijuana or drug paraphernalia in the room.

Finally, Ottens argues that the affidavit contained omissions. It stated that a dog sniff was performed on two vehicles and that the dog positively alerted and indicated to the odor of controlled substances in the black Pontiac Firebird. However, Ottens argues that when the dog alerted, the officer was able to immediately observe a marijuana blunt on the exterior of the vehicle in front of the windshield on the driver's side and no contraband was located during a search of the Firebird. The affidavit did not mention that the blunt had been located on the exterior of the vehicle nor did it indicate that a search of the Firebird had been conducted.

The district court, in ruling on the *Franks* Motion and, after striking the language that Ottens claimed was false or misleading, stated:

> When I review the affidavit, even striking the items that I've mentioned, I find the affidavit is sound, given the parameters that have been given to me by *State v. Short* and others that I reviewed. And I know you're familiar with all that.
>
> And so we have, again, kind of this odd set of circumstances that the police arrive. They think that Ottens and Casillas have been driving on the interstate and avoiding officers on the interstate show up. The [CI], again, for the purpose of this hearing, I find credible. And I think everything swings from that.
>
> . . . .
>
> . . . What I will do is say I find that the standards have been met, that I don't believe there were deliberate falsehoods. . .
>
> And I don't think overall there was a reckless disregard for the truth. Was there some embellishment? I believe so. Just sounds to me like there was.
>
> [Defense Counsel], I agree with you. I think there is some embellishment here. Is that fatal to this whole process? I don't believe so. You know, the reckless disregard for the truth is something that's pretty significant. It's a standard that we're familiar with. And I don't believe that in preparing the affidavit there was a reckless disregard for the truth. In fact, I would say, I'm not sure any of these statements actually were given with reckless disregard for the truth. Were they maybe a little reckless? Maybe they were embellished, I could grant you that.
>
> But, two things. One, I'm not sure that any of them would come out or should come out, but, number two, even given the ones that I've talked about. I think that the affidavit still passes constitutional muster in terms of what it is.

Following our review of the record, we find no error associated with the district court's denial of Ottens' *Franks* motion. Many of Ottens' allegations relate to law enforcement's false belief that they engaged in a high-speed chase of Ottens' vehicle prior to locating him at the Oasis Inn. Ottens then points to other discrepancies once law enforcement located him in the parking lot and began their investigation. As it relates to those inaccuracies, we find no clear error in the district court's conclusion that these were not knowingly false allegations by police or allegations made in reckless disregard for their truth. At this stage, following the Nebraska Supreme Court's dictates in *State v. Short*, 310 Neb. 81, 964 N.W.2d 272 (2021), we would only be required to excise intentionally false statements in reviewing the affidavit for probable cause. Having found these statements contained in the affidavit were not knowingly false or made in reckless disregard for the truth, we are not required to perform that function.

That said, even when we remove all such allegations from the affidavit, we are left with allegations from a credible CI that Ottens was in the process of delivering a large quantity of methamphetamine from Denver, Colorado to the exact hotel in Lincoln, Nebraska, where police eventually located Ottens. And Ottens was found in the hotel's parking lot near the exact vehicle identified by the CI. Upon arresting Ottens and discovering cocaine on his person during a search incident to that arrest, and after searching Ottens' car, police had not located the methamphetamine

described by the CI. This information provided probable cause for the warrant to search the hotel room where the CI alleged the methamphetamine would be delivered even without reference to items described in the affidavit related to the warrantless sweep of the room.

Because we find that even when the challenged allegations are removed from the affidavit, the affidavit still provided probable cause to search the hotel room on the strength of the CI's information. Accordingly, we find that the district court did not err in denying Otten's *Franks* motion and that applying the inevitable discovery doctrine, we need not determine whether the police erred in their protective sweep of the hotel room before obtaining the warrant to search that room. These assignments of error fail.

### 3. DENIAL OF MOTION FOR NEW TRIAL

Ottens next assigns that the district court erred in denying his motion for a new trial and failing to hold an evidentiary hearing thereon.

In criminal cases, motions for new trial are governed by Neb. Rev. Stat. §§ 29-2101 through 29-2103 (Reissue 2016). See *State v. Cross*, 297 Neb. 154, 900 N.W.2d 1 (2017). Section 29-2101 provides seven grounds upon which a motion for new trial may be granted. One such ground in § 29-2101(2) is juror misconduct. Ottens argues the district court erred in dismissing his motion for a new trial without granting him an evidentiary hearing on his claim of juror misconduct. Section 29-2102(2) dictates when an evidentiary hearing is required in connection with a request for a new trial. That subsection provides:

> If the motion for new trial and supporting documents fail to set forth sufficient facts, the court may, on its own motion, dismiss the motion without a hearing. If the motion for new trial and supporting documents set forth facts which, if true, would materially affect the substantial rights of the defendant, the court shall cause notice of the motion to be served on the prosecuting attorney, grant a hearing on the motion, and determine the issues and make findings of fact and conclusions of law with respect thereto.

Here, Ottens filed a timely motion for a new trial pursuant to § 29-2101(2) alleging juror misconduct based upon the allegation that after the conclusion of the trial, one of the jurors emailed court staff indicating that "there may have been undue pressure placed on [the juror] such that she voted in a way that violated her conscience." Ottens attached an affidavit to his motion which contained an email from the juror. The email stated, in part:

> . . . For 3 of the 4 counts I still stand my ground, but I can't sleep at night for giving in to one of the counts which landed [Ottens] guilty. I was so tired after 4 hours of deliberation that when it came to count 3, I buckled and I have been severely depressed about it since the verdict was read aloud Thursday. I've reached out to psychiatric counseling services at UNL for the first time and have an appointment later today. I'm just not sure how I can get over what I perceive as an [i]njustice. As an ex-juror, is there anything I can do to express my opinion to the judge or whoever to relieve my burden?

At a hearing thereon, the juror was present pursuant to a subpoena. However, during that hearing, the court sustained the State's objection to the court receiving the affidavit or hearing

juror testimony relying on Neb. Rev. Stat. § 27-606 (Reissue 2016) (relating to competency of juror as witness; at trial; inquiry into the validity of verdict or indictment).

Following that ruling, the district court overruled Otten's motion for a new trial without an evidentiary hearing based upon its finding that, on the face of Ottens' motion and supporting documents, Ottens failed to set forth sufficient facts to establish the applicability of one of the statutory grounds for a new trial set forth in § 29-2101. Specifically, the court stated, "I don't find misconduct of the jury, at least I don't find that I've been cited any case law that says a tired juror who buckled, that that's misconduct, accident, or surprise." The court went on to state that, even assuming the presence of juror misconduct, on the face of his allegations and supporting documents, Ottens was unable to overcome § 27-606(2) which provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him indicating an effect of this kind be received for these purposes.

After finding that the juror's email necessarily involved an examination of the juror's mental process, and that there was no indication that there had been any extraneous, prejudicial information, or any outside influence improperly brought to the jury in the documents provided to the district court, the court excused the juror without hearing her testimony and overruled Ottens' motion for a new trial and request for an evidentiary hearing. We agree with the district court.

In *State v. Allen*, 314 Neb. 663, 684-85, 992 N.W.2d 712, 729 (2023), the Nebraska Supreme Court set forth the standard to sustain a motion for a new trial based on juror misconduct:

> A criminal defendant claiming jury misconduct bears the burden of proving, by a preponderance of the evidence, (1) the existence of jury misconduct and (2) that such misconduct was prejudicial to the extent that the defendant was denied a fair trial. We have held that when an allegation of jury misconduct is made and is supported by a showing which tends to prove that serious misconduct occurred, the trial court should conduct an evidentiary hearing to determine whether the alleged misconduct actually occurred. The court's obligation to conduct an evidentiary hearing is satisfied where the judge provides the movant with an opportunity to present evidence at the hearing on the motion for new trial.

> The matter of whether the misconduct occurred is largely a question of fact. If jury misconduct occurred, the trial court must then determine whether it was prejudicial to the extent that the defendant was denied a fair trial. The question whether prejudice resulted from jury misconduct must be resolved by the trial court's drawing, from an independent evaluation of all the circumstances of the case, of reasonable inferences as to the effect of the extraneous information on an average juror.

However, the subject matter of the complaining party's offer of proof at an evidentiary hearing on alleged jury misconduct is carefully circumscribed by statute. An evidentiary hearing with regard to allegations of jury misconduct does not extend to matters which are barred from inquiry under § 27-606(2).

In *Golnick v. Callender*, 290 Neb. 395, 415-17, 860 N.W.2d 180, 196-97 (2015), the Nebraska Supreme Court stated:

Rule 606(2) prohibits a juror from testifying about the validity of a verdict based on the jury's deliberations or the juror's mental processes: "Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith . . . ."

Rule 606(2) also prohibits a court from receiving a juror's "affidavit or evidence of any statement by him indicating an effect of this kind." Its exceptions are limited to permitting a juror to "testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." We have previously looked to federal case law in applying rule 606(2) because it is adopted from Fed. R. Evid. 606(b).

The federal rule "is grounded in the common-law rule against admission of jury testimony to impeach a verdict and the exception for juror testimony relating to extraneous influences." The common-law rule that shields jury deliberations, in turn, rested on substantial policy considerations to protect the integrity and finality of jury trials. Permitting jurors to impeach the verdict would result in defeated parties harassing jurors "'in the hope of discovering something which might invalidate the finding [and] make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference.'" So Nebraska's rule 606(2) promotes the public interests of protecting jurors' freedom of deliberation and the finality of judgments, absent a plausible allegation of juror misconduct.

We have held that when an allegation of jury misconduct is made and is supported by a showing which tends to prove that serious misconduct occurred, the trial court should conduct an evidentiary hearing to determine whether the alleged misconduct actually occurred. But rule 606(2) "prohibits admission of a juror's affidavit to impeach a verdict on the basis of the jury's motives, methods, misunderstanding, thought processes, or discussions during deliberations, which enter into the verdict."

As applied to the instant case, because on the face of the documents provided to the court in connection with Ottens' motion for new trial under § 29-2101(2), there was no evidence that extraneous prejudicial information was improperly brought to the jury's attention, nor was there any evidence of an outside influence that was improperly brought to bear upon the juror, the juror's email and proposed testimony did not fall under any exception under § 27-606(2) or satisfy Ottens' burden under § 29-2102(2). Because a juror cannot testify to the effect of anything upon that juror's

mind or emotions that influenced the juror to assent to the verdict, and an evidentiary hearing with regard to allegations of jury misconduct does not extend to matters which are barred from inquiry under § 27-606(2), the district court did not err in denying an evidentiary hearing on the motion for a new trial or subsequently denying Ottens request for a new trial under the dictates of § 29-2102(2). This assignment of error fails.

### 4. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Ottens' final assignment of error is that his trial counsel was ineffective in (a) not filing a motion in limine to exclude, and in failing to object to testimony, regarding his children being taken into DHHS custody and the incorrect legal conclusions testified to by law enforcement concerning the matter that were highly prejudicial and not subject to the same legal standard as the criminal charge; (b) failing to elicit testimony from Investigator Eirich accepting responsibility for the errors and mistruths in the affidavit for search warrant at the *Franks* hearing; (c) failing to identify the other voices on the audio of the vehicle pursuit; (d) failing to address that the only information police obtained regarding Ottens' possession of firearms was years old; (e) failing to object to the admission of an exhibit which consisted of Facebook photographs of Ottens holding firearms, when the court solicited and accepted testimony from State's counsel instead of a witness; (f) failing to retain an expert to elicit scientific evidence the lay witnesses did not possess; (g) attempting to elicit scientific evidence from a lay witness who did not have scientific knowledge thereby presenting inaccurate information to Ottens' detriment; (h) failing to offer the prior sworn testimony of unavailable witnesses; and (i) failing to offer surveillance video recovered from the Oasis Inn in pretrial motions and during the trial.

In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Wheeler*, 314 Neb. 282, 989 N.W.2d 728 (2023). The record is sufficient to resolve on direct appeal a claim of ineffective assistance of counsel if the record affirmatively proves or rebuts either deficiency or prejudice with respect to the defendant's claims. *Id.*

To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

### (a) Motion in Limine

Ottens first assigns that his counsel was ineffective for failing to file a motion in limine to exclude evidence regarding the children's removal by DHHS and in failing to object to that line of questioning. Ottens argues that the evidence was inadmissible pursuant to Neb. Rev. Stat. § 27-403 (Reissue 2016) as highly prejudicial and under Neb. Rev. Stat. § 27-404 (Cum. Supp. 2022) as improper character evidence.

The decision whether or not to object has long been held to be part of trial strategy. *State v. Anders*, 311 Neb. 958, 977 N.W.2d 234 (2022). When reviewing claims of alleged ineffective assistance of counsel, trial counsel is afforded due deference to formulate trial strategy and tactics. *Id*. There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions. *Id*.

Here, in addition to being charged with drug-related offenses and resisting arrest, Ottens was also charged with child abuse stemming from conditions in the hotel room where his children were staying. The State elicited evidence that established the children were living in a hotel room at the Oasis Inn, were removed from the room due to its unsanitary conditions, and due to Ottens' arrest, were placed in DHHS custody with physical placement with the children's grandparents. Ottens appears to take issue with three questions relating to DHHS' role in such a situation and that he was informed that the children would not be returned without DHHS' authorization. We find the record on appeal is sufficient to address this allegation.

Because questions related to the removal of Ottens' children from the Oasis Inn formed the basis for the child abuse charge, we find that the questions and responses thereto were not prejudicial to the other three charged offenses for which Ottens was convicted. The questions related to the removal of Ottens' children were in no way related to the charges related to resisting arrest or the possession of cocaine found on Ottens' person in the search incident to his arrest. And based upon the evidence relating to the condition of the hotel room wherein Ottens' children were found, we find the questions and responses governing DHHS' role in securing his children likewise did not prejudice him related to his conviction for child abuse. This specific allegation of ineffective assistance of counsel fails.

(b) Investigator Eirich Testimony

Ottens next assigns that his trial counsel was ineffective when, during the *Franks v. Delaware*, 438 U.S. 154 (1978), hearing, counsel failed to prompt Investigator Eirich to accept responsibility for errors and mistruths contained in the affidavit for the search warrant which Investigator Eirich authored.

At the *Franks* hearing, counsel cross-examined Investigator Eirich on multiple alleged inaccuracies in the affidavit, including whether information on the vehicle was, in fact, received from Facebook photos; whether photographs were sent to the Nebraska State Patrol; whether Trooper Lingrin positively identified Casillas as a passenger in the fleeing vehicle; whether the speed of the fleeing vehicle exceeded 100 m.p.h.; whether specific body damage on the fleeing vehicle could be seen in the cruiser footage; what vehicle Ottens was near when he was arrested; why the affidavit omitted information related to the location of the marijuana blunt and how narcotics were not found in the Pontiac Firebird; whether the information from the search of the vehicle was relayed to Investigator Eirich prior to the completion of the search warrant; and the location of Ottens' brother during Ottens' arrest.

Ottens argues that during the trial, counsel elicited testimony that it was Investigator Eirich's responsibility to ensure that information contained in the affidavit was correct. However, Ottens argues that this should have also been elicited during the *Franks* hearing so the affidavit, as it related to the child abuse charge, could have been considered during the suppression hearing.

The record here affirmatively rebuts any alleged deficiency or prejudice. Specifically, the district court found that, even after striking alleged inaccuracies contained in the affidavit, the affidavit still contained sufficient allegations of probable cause to support the issuance of the search warrant and we agree. And because we likewise agree that there was no clear error associated with the district court's findings that any inaccuracies contained within the affidavit were not deliberate nor written with a reckless disregard for the truth, we find no prejudice associated with defense counsel's alleged failure to elicit testimony at the *Franks* hearing regarding Elrich's individual responsibility for inaccuracies allegedly contained in the search warrant. This claim fails.

### (c) Audio Recording of Pursuit

Ottens next assigns that trial counsel was ineffective during questioning for failing to differentiate voices on the audio recording of the video documenting Trooper Lingrin's pursuit of a Grand Prix. Ottens argues that had counsel clarified the identities of the individuals associated with the voices contained on the audio recording, this would have revealed officer error, which then impacted officers' approach of Ottens in the hotel's parking lot.

We find that Ottens cannot establish prejudice due to this alleged deficiency. Regardless of the inaccuracy in officers' mistaken belief that the vehicle involved in the high-speed pursuit was the same vehicle located at the Oasis Inn, as we explained before, Ottens' person was searched pursuant to a valid arrest and there was sufficient probable cause to support the warrant to search the hotel room. Further clarification regarding the facts that led to officers' mistaken belief that Ottens had been in the high-speed chase prior to being located at the hotel parking lot had no bearing on the evidence relating to the convictions as we have previously described herein. This claim of ineffective assistance of counsel fails.

### (d) Information Regarding Firearms Possession

Ottens assigns that his trial counsel was ineffective in failing to address that the only information regarding Ottens' possession of firearms was years old.

Here, prior to approaching Ottens, investigators had reviewed reports indicating that Ottens might be carrying firearms. Additionally, investigators located photographs posted to Ottens' Facebook page depicting Ottens holding and shooting handguns and long rifles. The report, which was received into evidence, depicted an entry on March 28, 2017, which stated:

> [Ottens] uses "Lucky Livingston" as his [Facebook] name. [Ottens] posted photos on 03-28-17 at an unknown location of him holding a black semi-auto handgun and a [black/brown] pump shotgun. Use caution as both have a history of possessing firearms, using narcotics and being unfriendly with police.

> [V]arious photos/ videos of Ottens w/firearms were located on Ottens' public Facebook profile . . . . Photos/videos were screen shotted and saved to Resource Space.

Ottens argues that the failure to highlight the outdated information concerning his prior use of firearms compromised him in that reliance on this outdated information "was a shallow ruse for obtaining evidence of drug crimes without [a] warrant." Brief for appellant at 60. But as we have already explained earlier in this opinion, law enforcement had probable cause to search Ottens

pursuant to a search incident to a valid arrest and had a valid search warrant to search his hotel room. As such, examination of Ottens' history of prior gun use did not prejudice Ottens with respect to the three convictions we have outlined before. This assignment of error fails.

### (e) Failure to Object

During the *Franks v. Delaware*, 438 U.S. 154 (1978), hearing, the State offered an exhibit which included Facebook photographs of Ottens holding different firearms. Defense counsel objected to the exhibit on the bases of relevance and surprise stating:

> Judge, I haven't seen any of these until today. If these pictures were on . . . Ottens' Facebook page as the witness claims, they should have been obtained, provided to counsel months ago. We've been arguing about this issue since January. This is the first day I ever heard of any pictures.
>
> . . . .
>
> . . . I would object. Both objections were made to Exhibit 40 and 41, relevance and surprise. [The prosecutor] does say that these are on [Ottens'] public Facebook page. That may or may not be true. I do not know that to be true. I have not been provided copies of these pictures, despite having had depositions in February and having alerted the State to my request for such evidence. This is surprise as well.

The court received the exhibit over Ottens' objection.

After the State requested that Investigator Eirich identify each of the photos, Ottens' counsel made a standing objection stating that "I don't know how we know it's from [Ottens'] Facebook page. It's not associated with Facebook at all by the looks of it." Ottens argues that his trial counsel should also have renewed his relevancy objection based upon a lack of foundation.

Ottens' assignment appears to relate to the failure to renew a foundational objection during the suppression hearing. However, the rules of evidence do not apply to suppression hearings. *State v. Piper*, 289 Neb. 364, 855 N.W.2d 1 (2014). Defense counsel is not ineffective for failing to raise an argument that has no merit. *State v. Martinez*, 302 Neb. 526, 924 N.W.2d 295 (2019). This assignment of error fails.

### (f) Failure to Retain Expert and Eliciting Scientific Evidence From Lay Witness

Ottens next assigns that his trial counsel was ineffective in failing to retain an expert to testify regarding scientific evidence that lay witnesses did not possess. He further claims that trial counsel was ineffective in attempting to elicit scientific evidence from a lay witness who did not have requisite scientific knowledge which resulted in inaccurate information being presented to the jury to Ottens' detriment.

During the trial, related to the child abuse charge, the State adduced testimony that raw marijuana located in the hotel room was readily accessible by the children. Ottens argues that defense counsel attempted to elicit testimony from Trooper Strode that heat is required in order for THC to cause a marijuana high. Ottens claims that this testimony was offered to raise doubt as to the risk of harm that raw marijuana posed to the children. However, Ottens contends that his trial counsel's line of questioning caused the opposite to occur.

We find that, based upon the record, Ottens could not demonstrate any prejudice from trial counsel's actions or inactions on this issue. Even if the testimony regarding raw marijuana is disregarded, other evidence provided sufficient evidence to support Ottens' child abuse conviction including that the hotel room was filthy, smelled of urine and feces, that there was dog feces in the room, and that a firearm and methamphetamine pipes with residue could be easily accessed by the children. Because of the overwhelming evidence supporting his child abuse conviction, Ottens cannot establish any prejudice that resulted from his trial counsel's alleged failure to elicit testimony to establish that raw marijuana posed a decreased risk to the children or in failing to have an expert witness testify regarding this issue. This claim fails.

(g) Failing to Offer Prior Sworn Testimony of Unavailable Witnesses

Ottens next assigns as error that trial counsel was ineffective in failing to offer the prior sworn testimony of two unavailable witnesses – Stacy Ottens and Ottens' brother, Joshua Ottens. Because Ottens is required only to name the individual witnesses not called and is not required to provide the substance of their testimony, this allegation is normally sufficient to preserve the assignment for a later proceeding. See *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022).

Here, Ottens' claim relates to trial counsel's failure to admit the sworn statements from the two identified witnesses who Ottens claims were unavailable but had testified during the *Franks* hearing. Ottens argues that Stacy Ottens' testimony would have supported Ottens' claim that he did not resist arrest; however, because other witnesses at trial testified that Ottens' did not resist arrest, the testimony Ottens sought to introduce from Stacy Ottens was merely cumulative. And regarding Ottens' claim that Joshua Ottens' testimony would have established that Ottens' children were safely managed, when viewed against the overwhelming and uncontroverted evidence of the contents and condition of the hotel room in which the children were found, we find no prejudice associated with any alleged error by trial counsel in failing to offer the witnesses' prior statements even assuming that these statements would have been admissible if offered. This assignment of error fails.

(h) Failing to Offer Surveillance Video From Oasis Inn

Finally, Ottens assigns as error that his trial counsel was ineffective in failing to offer surveillance video from the Oasis Inn at any point during pretrial or trial. He claims that offering the surveillance video would have shown that he did not resist arrest, and thus would have aided in his motion to suppress evidence and would have resulted in his acquittal of the charge of resisting arrest.

The record establishes that trial counsel filed a pretrial motion to suppress related to the allegation that Ottens resisted arrest and the evidence obtained as a result of his alleged unlawful arrest. In the motion to suppress, trial counsel alleged that an investigation had revealed that the Oasis Inn's cameras had captured video surveillance of the incident, that the front desk manager indicated that the video showed that Ottens did not resist arrest, and that the office manager believed that the video had been provided to law enforcement, but that surveillance videos are automatically deleted after 30 days and the video of the relevant date was no longer available. During the suppression hearing, trial counsel requested that the court compel law enforcement to

provide the surveillance video. The State responded that it was not aware of the existence of any such surveillance video and, during the course of the proceedings, Investigators Lesiak, Strode, and Eirich denied collecting any surveillance video from the Oasis Inn.

Subsequently, on September 17, 2021, defense counsel addressed the motion to compel production of the Oasis Inn surveillance video, acknowledging that counsel's own investigator had contacted the owner of the Oasis Inn and had been able to obtain a copy of the security footage from May 14, 2020, and that he had provided a copy of the footage to the State and Ottens. Further, defense counsel stated that he had "reviewed that footage. It does not show anything of relevance to this hearing. So, I have to withdraw my motion pursuant to my ethical obligations of candidness." The court granted trial counsel's request to withdraw the motion. Accordingly, the record refutes Ottens' claim that the video establishes that he did not resist arrest and that trial counsel was ineffective in failing to offer the surveillance video into evidence. This assignment of error fails.

## VI. CONCLUSION

For the reasons stated above, we affirm Ottens' convictions and sentences.

AFFIRMED.