Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/19/2023 08:06 AM CDT

**State of Nebraska, appellee, v.
January T. Wheeler, appellant.**
___ N.W.2d ___

Filed May 19, 2023.    No. S-21-1036.

1. **Effectiveness of Counsel: Records: Appeal and Error.** The fact that
an ineffective assistance of counsel claim is raised on direct appeal does
not necessarily mean that it can be resolved. The determining factor is
whether the record is sufficient to adequately review the question.
2. **Effectiveness of Counsel: Appeal and Error.** In reviewing claims of
ineffective assistance of counsel on direct appeal, an appellate court
decides only whether the undisputed facts contained within the record
are sufficient to conclusively determine whether counsel did or did not
provide effective assistance and whether the defendant was or was not
prejudiced by counsel's alleged deficient performance.
3. **Effectiveness of Counsel: Records: Proof: Appeal and Error.** The
record is sufficient to resolve on direct appeal a claim of ineffective
assistance of counsel if the record affirmatively proves or rebuts either
deficiency or prejudice with respect to the defendant's claims.
4. **Effectiveness of Counsel: Proof.** To show that counsel's performance
was deficient, the defendant must show counsel's performance did not
equal that of a lawyer with ordinary training and skill in criminal law.
5. **Effectiveness of Counsel: Proof: Words and Phrases.** To show preju-
dice in a claim of ineffective assistance of counsel, the defendant must
demonstrate a reasonable probability that but for counsel's deficient
performance, the result of the proceeding would have been different.
A reasonable probability is a probability sufficient to undermine confi-
dence in the outcome.
6. **Criminal Law: Rules of Evidence: Other Acts.** In a criminal case,
Neb. Rev. Stat. § 27-404(1) (Cum. Supp. 2022) operates as a broad
exclusionary rule of relevant evidence that speaks to a criminal defend-
ant's propensity to have committed the crime or crimes charged.

7. **Rules of Evidence: Other Acts.** The purpose of Neb. Rev. Stat. § 27-404(1) (Cum. Supp. 2022) is that propensity evidence, despite its relevance, creates the risk of a decision by the trier of fact on an improper basis.

8. **Trial: Verdicts: Appeal and Error.** An error is prejudicial only when it cannot be said to be harmless beyond a reasonable doubt. An error is harmless beyond a reasonable doubt when the actual guilty verdict rendered in the questioned trial was surely unattributable to the error.

9. **Trial: Convictions: Evidence.** Where the evidence is cumulative and other competent evidence supports the conviction, the improper admission or exclusion of evidence is harmless beyond a reasonable doubt.

10. **Rules of Evidence: Other Acts.** Neb. Rev. Stat. § 27-404(2) (Cum. Supp. 2022) operates as an inclusionary rule of evidence. It provides that evidence of other crimes, wrongs, or acts may be admissible for purposes other than propensity.

11. **Criminal Law: Trial: Proof: Other Acts.** Proof of another distinct substantive act is admissible in a criminal prosecution when there is some legal connection between the two upon which it can be said that one tends to establish the other or some essential fact in issue.

12. **Circumstantial Evidence: Words and Phrases.** Circumstantial evidence is evidence that, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact exists.

13. **Rules of Evidence: Other Acts.** Evidence is not an "other act" under Neb. Rev. Stat. § 27-404 (Cum. Supp. 2022) where it only tends to logically prove an element of the crime charged.

14. **Courts: Judgments: Appeal and Error.** The Nebraska Supreme Court will not reverse a judgment of the Nebraska Court of Appeals that it deems correct simply because its reasoning differs from that employed by the Nebraska Court of Appeals.

Petition for further review from the Court of Appeals, Pirtle, Chief Judge, and Bishop and Arterburn, Judges, on appeal thereto from the District Court for Lancaster County, Lori A. Maret, Judge. Judgment of Court of Appeals affirmed.

Timothy S. Noerrlinger, of Naylor & Rappl Law Office, for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

HEAVICAN, C.J.

## INTRODUCTION

January T. Wheeler petitioned this court for further review of the Nebraska Court of Appeals' conclusion that the record refuted two of his claims of ineffective assistance of counsel for failure to object to improper evidence under Neb. Rev. Stat. § 27-404 (Cum. Supp. 2022) (rule 404). While our reasoning differs in part from that employed by the Court of Appeals, our conclusion is the same. Accordingly, we affirm.

## FACTUAL BACKGROUND

The State charged Wheeler with three criminal counts: assault in the first degree,[1] use of a firearm to commit a felony,[2] and possession of a firearm by a prohibited person.[3] The information charged that these counts were committed "on or about" December 6, 2020. Prior to trial, Wheeler filed a motion for disclosure of the State's intention to use evidence of other crimes, wrongs, or acts subject to rule 404. The State made no such disclosure and contended that none of its evidence was subject to rule 404.

### TRIAL PROCEEDINGS

It was undisputed that at approximately 12:30 a.m. on December 6, 2020, Brandon "Tank" Wagner was shot three times in a shared driveway outside a single-wide trailer where Kristian "Slim" Hespen resided with his girlfriend. The firearm used in the shooting was a tan Glock 9-mm pistol with an extended magazine. The primary issue at trial was whether Wheeler was the shooter.

---

[1] Neb. Rev. Stat. § 28-308 (Reissue 2016).

[2] Neb. Rev. Stat. § 28-1205(1)(c) (Reissue 2016).

[3] Neb. Rev. Stat. § 28-1206(1) and (3)(b) (Cum. Supp. 2022).

Both Tank and Slim testified at trial on behalf of the State. We summarize their testimony as to the events surrounding the shooting, acknowledging that their testimony had many internal inconsistencies, differed in various ways, and conflicted with the physical and forensic evidence produced by the State.

In approximately November 2020, Wheeler and Tank were introduced to each other by Slim. The three began a joint drug-dealing venture. The venture soon ran into problems. Tank believed Wheeler owed him money and drove to Slim's trailer to collect. Tank testified that he knew Wheeler was "there with his gun" and came armed with a metal flashlight. Slim was outside the trailer when Tank arrived.

According to Tank, he went up the porch steps to Slim's trailer, knocked, and immediately opened the door. When Tank opened the door, he saw Wheeler "pointing the gun right at the door." Tank turned around and walked back down the porch steps. When he was at the bottom of the steps, he was shot twice in the back. Tank then turned around, saw Wheeler with the Glock, ascended the steps, and started to swing his flashlight at Wheeler. Tank "hit him a couple times," causing Wheeler to bleed from a head wound. Tank then wrestled with Wheeler for the Glock, which went off, resulting in Tank sustaining a gunshot wound to his "gut."

Slim testified that he heard four gunshots in quick succession. He turned and saw Tank fall in the driveway and saw Wheeler "with the handgun, and [Wheeler] turned and went inside." Slim described the gun as "brown with an extended clip."

Tank was assisted to the passenger seat of his vehicle, and Slim got into the driver's seat. At this point, Wheeler approached the driver's-side window and gave the Glock to Slim, instructing him to dispose of it. After receiving the Glock from Wheeler, Slim drove away toward a hospital.

Weeks later, in an entirely unrelated case, police executed a search warrant of an apartment wherein they discovered

the Glock, which was later forensically linked to Tank's shooting. Forensic testing found Wheeler's blood inside the barrel of the Glock.

In addition to Tank's and Slim's testimony regarding the night of the shooting, the State elicited testimony from Tank and Slim that Wheeler was previously seen in possession of the Glock and that Wheeler had a reputation for possessing a firearm. On direct examination, Tank testified that he had previously seen the Glock on a table at Wheeler's apartment. Tank also testified that Wheeler was "known to carry the gun and willing to shoot somebody" and that Wheeler "carries a Glock 9 with an extended clip everywhere he goes." Slim's direct testimony included that he had seen the Glock on a table at Wheeler's apartment and that Slim had "known [Wheeler] to carry a gun." Wheeler's trial counsel did not object to any of this testimony.

The jury returned a verdict of not guilty of assault in the first degree and use of a firearm to commit a felony, but guilty of possession of a firearm by a prohibited person. The district court sentenced Wheeler to a term of 25 to 30 years' imprisonment on the possession conviction.

## Direct Appeal Before
## Court of Appeals

On appeal, the Court of Appeals affirmed Wheeler's conviction and sentence.[4] Wheeler assigned that the district court erred in entering a guilty verdict unsupported by sufficient admissible evidence, not allowing defense counsel to impeach Tank with extrinsic evidence, and imposing an excessive sentence. The Court of Appeals concluded that these assignments failed because there was sufficient evidence, Tank was effectively impeached without the related extrinsic evidence, and the sentence was within statutory limits.

---

[4] See *State v. Wheeler*, No. A-21-1036, 2022 WL 16557378 (Neb. App. Nov. 1, 2022) (selected for posting to court website).

Wheeler also assigned that his trial counsel was ineffective for failing to object to Tank's and Slim's testimony that Wheeler was previously seen with a gun, object to Tank's testimony of Wheeler's character for possession of a firearm, offer cell phone records to impeach Tank's testimony, call three other witnesses of the shooting, and properly impeach Tank's testimony. The Court of Appeals concluded that Wheeler preserved his claim of ineffective assistance of counsel for failing to call the three witnesses, and the record refuted his other four claims. In doing so, the Court of Appeals made no distinction between the testimony of the witnesses' observations of the Glock and Wheeler's reputation for having and carrying a gun.

## ASSIGNMENT OF ERROR

Wheeler assigns that the Court of Appeals erred by rejecting a claim of ineffective assistance of counsel for counsel's failure to object to improper rule 404 evidence.

## STANDARD OF REVIEW

[1] When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.[5] The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved.[6] The determining factor is whether the record is sufficient to adequately review the question.[7]

---

[5] *State v. Anders*, 311 Neb. 958, 977 N.W.2d 234 (2022).

[6] *Id.*

[7] *Id.*

ANALYSIS

Wheeler contends his trial counsel was ineffective for failing to object under rule 404 to trial testimony by Tank and Slim that they observed the Glock in Wheeler's apartment sometime before the shooting and that Wheeler had a reputation for carrying a firearm. The State counters that the testimony was outside the scope of rule 404 and that to the extent it was not, Wheeler's claims fail because the evidence was cumulative and, therefore, harmless. Ultimately, the Court of Appeals agreed with the State and concluded that the evidence "constituted circumstantial evidence that Wheeler was in possession of a firearm on or about December 6."[8]

[2,3] In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.[9] The record is sufficient to resolve on direct appeal a claim of ineffective assistance of counsel if the record affirmatively proves or rebuts either deficiency or prejudice with respect to the defendant's claims.[10]

[4,5] To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.[11] To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[12]

---

[8] *State v. Wheeler, supra* note 4, 2022 WL 16557378 at *11.

[9] *State v. Miranda*, 313 Neb. 358, 984 N.W.2d 261 (2023).

[10] *Id.*

[11] *Id.*

[12] *State v. Thomas*, 311 Neb. 989, 977 N.W.2d 258 (2022).

A reasonable probability is a probability sufficient to undermine confidence in the outcome.[13]

Because Wheeler challenges two distinct types of testimony, we must address each separately.

### Wheeler's Reputation

Wheeler assigns that his trial counsel was ineffective for failing to object to Tank's testimony about his character for possessing a firearm under rule 404. Tank testified that Wheeler was "known to carry the gun and willing to shoot somebody" and that Wheeler "carries a Glock 9 with an extended clip everywhere he goes." Wheeler argues that this direct testimony of Wheeler's reputation was inadmissible under rule 404.

[6,7] In a criminal case, rule 404(1) operates as a broad exclusionary rule of relevant evidence that speaks to a criminal defendant's propensity to have committed the crime or crimes charged.[14] The purpose of rule 404(1) is that such propensity evidence, despite its relevance, creates the risk of a decision by the trier of fact on an improper basis.[15] Accordingly, rule 404(1) renders all propensity evidence inadmissible unless it is first offered by an accused, and even then, only when it evidences a pertinent character trait.[16]

The portions of Tank's testimony to which Wheeler objects invite a propensity inference that Wheeler committed the crimes he was charged with because he is the type of person to do so. Because rule 404 applied to this testimony, Wheeler's trial counsel could have objected to this testimony, and

---

[13] *Id.*

[14] See, § 27-404(1); *State v. Samuels*, 205 Neb. 585, 289 N.W.2d 183 (1980). See, also, *State v. Torres*, 283 Neb. 142, 812 N.W.2d 213 (2012).

[15] *State v. Jenkins*, 294 Neb. 475, 883 N.W.2d 351 (2016). See, *State v. Oldson*, 293 Neb. 718, 884 N.W.2d 10 (2016); *State v. Martin*, 198 Neb. 811, 255 N.W.2d 844 (1977); *State v. Moore*, 197 Neb. 294, 249 N.W.2d 200 (1976); *State v. Casados*, 188 Neb. 91, 195 N.W.2d 210 (1972).

[16] See, also, Neb. Rev. Stat. § 27-405 (Reissue 2016).

we assume without deciding that his counsel was deficient in failing to do so.

[8,9] However, Wheeler must still have been prejudiced by any deficiency of his counsel such that it undermines his conviction. We have recognized that an error is prejudicial only when it cannot be said to be harmless beyond a reasonable doubt.[17] An error is harmless beyond a reasonable doubt when the actual guilty verdict rendered in the questioned trial was surely unattributable to the error.[18] Where the evidence is cumulative and other competent evidence supports the conviction, the improper admission or exclusion of evidence is harmless beyond a reasonable doubt.[19]

Here, Tank's testimony of Wheeler's reputation for possessing a gun was cumulative of Slim's testimony that Wheeler was known to carry a gun. Because Wheeler does not assign that his trial counsel was ineffective for failing to object to Slim's similar testimony as to Wheeler's reputation, his trial counsel cannot be ineffective for failing to object to the cumulative evidence of his reputation.

Further, as the Court of Appeals concluded below, other competent evidence supports Wheeler's conviction. Tank and Slim identified Wheeler as the shooter and said that Wheeler possessed the Glock when he gave it to Slim afterward. Tank testified that he saw Wheeler in possession of the Glock when he entered the trailer. Wheeler's blood was also found inside the barrel of the Glock. This competent evidence supports Wheeler's conviction.

Because Tank's testimony as to Wheeler's reputation was cumulative, and other competent evidence exists to support Wheeler's conviction, there is not a reasonable probability that but for his trial counsel's failure to object to this

---

[17] See, *State v. Jennings*, 305 Neb. 809, 942 N.W.2d 753 (2020); *State v. Thompson*, 301 Neb. 472, 919 N.W.2d 122 (2018).

[18] See *State v. Miller*, 312 Neb. 17, 978 N.W.2d 19 (2022).

[19] See *State v. Matteson*, 313 Neb. 435, 985 N.W.2d 1 (2023).

evidence, the result of the proceeding would have been different. The record affirmatively rebuts Wheeler's claim.

### PRIOR OBSERVATIONS

Wheeler also assigns that his trial counsel was ineffective for failing to object to testimony from both Tank and Slim regarding their observations of the Glock in Wheeler's apartment before the shooting. Wheeler contends that this testimony concerned a prior bad act and was inadmissible under rule 404(2). Specifically, Wheeler argues that the Court of Appeals erred in its determination that Tank's and Slim's testimony regarding their prior observations of the Glock in Wheeler's apartment was evidence of the crime Wheeler was charged with committing "on or about" December 6, 2020. Wheeler contends that the testimony is subject to rule 404(2) because the timing of the sighting was ambiguous and vague. While we agree that the timing of the sighting was somewhat ambiguous and vague, the timing is not dispositive of the issue. Evidence subject to rule 404(2) must be both an "other act" and raise a propensity inference.

[10,11] Rule 404(2) operates as an inclusionary rule of evidence.[20] It provides that evidence of other crimes, wrongs, or acts may be admissible for purposes other than propensity.[21] Proof of another distinct substantive act is admissible in a criminal prosecution when there is some legal connection between the two upon which it can be said that one tends to establish the other or some essential fact in issue.[22]

Upon objection to its admissibility, a proponent of evidence offered pursuant to rule 404(2) is required to state on the record the specific purpose or purposes for which the

---

[20] See, § 27-404(2); *State v. Williams*, 247 Neb. 878, 530 N.W.2d 904 (1995); *State v. Robb*, 224 Neb. 14, 395 N.W.2d 534 (1986).

[21] § 27-404(2). See *State v. Torres, supra* note 14.

[22] *State v. Casados, supra* note 15. See *State v. Meadows*, 188 Neb. 287, 196 N.W.2d 171 (1972).

evidence is being offered, and the trial court must similarly state, on the record, the purpose or purposes for which such evidence is received.[23] In criminal cases, before the admission of such evidence, the prosecution must prove to the court, outside the presence of any jury, "by clear and convincing evidence that the accused committed the crime, wrong, or act."[24] When admissible, upon a party's request, the trial court must instruct the jury as to the specific purposes for which the evidence was received.[25]

The information in this case alleged that Wheeler committed the crimes charged "on or about" December 6, 2020. We have stated that the words "on or about" do not put the time at large, but indicate that it is stated with approximate certainty.[26] The phrase is used in reciting the date of an occurrence to escape the necessity of being bound by an exact date.[27] It means "approximately," "about," "without substantial variance from," or "near."[28] The Legislature has provided that an information shall not be deemed invalid "for stating the time imperfectly."[29] The timeframe indicated in the complaint or information is imperative to allow the criminal defendant to prepare a defense to the prosecution.[30] Accordingly,

---

[23] *State v. Torres, supra* note 14. Compare Neb. Rev. Stat. § 27-414 (Reissue 2016).

[24] § 27-404(3). See 1993 Neb. Laws, L.B. 598.

[25] Neb. Rev. Stat. § 27-105 (Reissue 2016). See, *State v. Oldson, supra* note 15; *State v. Torres, supra* note 14; *State v. Ryan*, 233 Neb. 74, 444 N.W.2d 610 (1989); *State v. Easter*, 174 Neb. 412, 118 N.W.2d 515 (1962).

[26] *State v. Metzger*, 199 Neb. 186, 256 N.W.2d 691 (1977).

[27] *Id.*

[28] *Id.* at 187, 256 N.W.2d at 692 (internal quotation marks omitted).

[29] Neb. Rev. Stat. § 29-1501 (Reissue 2016). See Neb. Rev. Stat. § 29-1603(1) (Reissue 2016).

[30] *State v. Beermann*, 231 Neb. 380, 436 N.W.2d 499 (1989). See *State v. Smith*, 269 Neb. 773, 696 N.W.2d 871 (2005). See, also, *Rema v. State*, 52 Neb. 375, 72 N.W. 474 (1897).

this timeframe is also highly relevant to determining whether offered evidence constitutes evidence of another act.[31] But it is also not controlling.[32]

We have long held that possession is a continuing offense.[33] A continuing offense is defined as a continuous, unlawful act or series of acts set in motion by a single impulse and operated by an unintermittent force, however long a time it may occupy; an offense which continues day by day; a breach of the criminal law, not terminated by a single act or fact, but subsisting for a definite period and intended to cover or apply to successive similar obligations or occurrences.[34] The crime of possession may be brief, if complete, or it may extend over a period of time if uninterrupted.[35] Thus, when a prohibited person's possession of a firearm, actual or constructive, is uninterrupted, it constitutes a single offense.[36]

[12,13] In this case, Wheeler challenges the testimony of observations of a very distinctive firearm, a tan Glock with an extended magazine, in his apartment. This distinctive firearm, of which the witnesses had personal knowledge, is the specific firearm involved in the crimes for which Wheeler was charged. The testimony that the Glock was in Wheeler's apartment sometime before the shooting took place served as circumstantial evidence that Wheeler committed the charged crimes. Circumstantial evidence is evidence that, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact exists.[37] Evidence is not an "other act" under rule 404(2) where it only tends to logically

---

[31] See *id.*

[32] See *State v. Cullen*, 292 Neb. 30, 870 N.W.2d 784 (2015).

[33] See *State v. Williams*, 211 Neb. 650, 319 N.W.2d 748 (1982).

[34] *Id.*

[35] *Id.*

[36] See *id.*

[37] *State v. Keadle*, 311 Neb. 919, 977 N.W.2d 207 (2022).

prove an element of the crime charged.[38] A logical inference arising from the fact that the Glock was in Wheeler's apartment before the shooting is that Wheeler possessed and used the Glock to shoot Tank on or about December 6, 2020.

Moreover, the fact that the Glock was observed in Wheeler's apartment at a time before the shooting occurred did not reflect on his character. It did not invite a propensity inference that Wheeler is the *type* of person to have committed the charged crimes; rather, it only served as evidence that Wheeler *was* the person who committed the crimes. Thus, because the evidence did not give rise to a propensity inference, it was not subject to rule 404. Hence, Wheeler's trial counsel could not have been deficient for failing to object to this evidence. The record affirmatively rebuts Wheeler's claim.

### Prior Cases

The parties suggest that this conclusion is in tension with our decision in *State v. Freemont*.[39] To that effect, the State requests that we disapprove or abrogate our *Freemont* decision, which it contends we have already done implicitly in *State v. Salvador Rodriguez*.[40]

In *Freemont*, the defendant was charged with second degree murder, use of a deadly weapon to commit a felony, and possession of a deadly weapon by a prohibited person for events occurring "'on or about the 18th day of June, 2010.'"[41] The evidence adduced in that case showed that the victim was engaged in an altercation with a third individual when the defendant pulled a gun out of his backpack and shot the

---

[38] See *State v. Freemont*, 284 Neb. 179, 817 N.W.2d 277 (2012) (Cassel, Judge, concurring). See, also, *U.S. v. Buckner*, 868 F.3d 684 (8th Cir. 2017) (holding defendant's prior possession and use of same firearm not subject to Fed. R. Evid. 404(b)).

[39] *State v. Freemont, supra* note 38.

[40] *State v. Salvador Rodriguez*, 296 Neb. 950, 898 N.W.2d 333 (2017).

[41] *State v. Freemont, supra* note 38, 284 Neb. at 213, 817 N.W.2d at 304 (Cassel, Judge, concurring).

victim. At trial, two witnesses were asked by the State whether they had seen the defendant carry a gun prior to the day of the shooting. The witnesses testified that they observed the defendant engage in an altercation with another individual a week before the shooting. During that altercation, the defendant displayed a gun that he kept in his backpack. When the defendant was apprehended, officers recovered a backpack, but a gun was never recovered.

The issue in *Freemont* was whether the testimony of the prior altercation and observations of the gun and backpack were subject to rule 404(2). We determined that it was a separate incident and not substantive evidence of the crimes charged and, thus, fell under rule 404(2). The concurrence in *Freemont* emphasized that the defendant was not only charged with murder, but was also charged with possession, and reasoned that the prior observation of a gun similar to the one used in the shooting bore directly on an element of the possession charge.

In reaching our decision in *Freemont*, we noted that the prior incident occurred "several days or a week (the record is unclear) before that date," and we determined that it was not part of the same transaction of the crimes charged.[42] But, as we have noted on other occasions, we failed to discuss the concept of continuing possession in *Freemont*.[43] Instead, we focused our analysis on the fact that the prior altercation was with an individual unrelated to the crimes charged and did not provide any insight into the defendant's killing of the victim. We stated that "[t]he prior misconduct involved *an altercation* with [the witness'] cousin, who played no part in [the victim's] murder," and that therefore, the evidence was not part of the same transaction.[44]

---

[42] *Id.* at 191, 817 N.W.2d at 290.

[43] See *State v. Salvador Rodriguez, supra* note 40.

[44] *State v. Freemont, supra* note 38, 284 Neb. at 192, 817 N.W.2d at 291 (emphasis supplied).

We now think that the concurrence's analysis of the possession charge in *Freemont* was the better reasoned approach and reject the reasoning of the majority as applied to possession charges. In *Salvador Rodriguez*, we stated that "our holding in *Freemont* is limited to circumstances where the offense of possession is entirely different from the most serious charged offense."[45] That articulation was borne out of our discussion in *State v. Cullen*,[46] wherein we distinguished the evidence at issue from that in *Freemont*. We are now similarly persuaded that our limitation of *Freemont* in *Salvador Rodriguez,* sourced from *Cullen,* is not always helpful to the "other acts" analysis, and we disapprove of that articulation. Our holding in *Freemont* did not rest on a level of similarity between the prior altercation and the charged offenses or on a tiered system of criminal seriousness. It was defined as a matter of character. That analysis does not apply in Wheeler's case, wherein the evidence tends to prove the crimes charged.[47]

Rule 404's procedural protections should not be circumvented when there is a danger that a jury will improperly find a criminal defendant guilty based on the type of person the defendant is because of what the defendant has done.[48] That danger is what a trial court must weigh when determining whether the evidence is admissible and the proper limits of the jury's consideration of the evidence.[49] In this case, the evidence tends to logically prove an element of the crime charged and rule 404 is not implicated.

---

[45] *State v. Salvador Rodriguez, supra* note 40, 296 Neb. at 969, 898 N.W.2d at 348 (citing *State v. Cullen, supra* note 32).

[46] *State v. Cullen, supra* note 32.

[47] Cf. *State v. Parker*, 276 Neb. 661, 757 N.W.2d 7 (2008) (Gerrard, J., concurring; Heavican, C.J., joins), *opinion modified on denial of rehearing* 276 Neb. 965, 767 N.W.2d 68 (2009).

[48] See *State v. Ash*, 286 Neb. 681, 838 N.W.2d 273 (2013). See, also, *U.S. v. Green*, 617 F.3d 233 (3d Cir. 2010).

[49] § 27-404(2) and (3).

## CONCLUSION

[14] The Nebraska Supreme Court will not reverse a judgment of the Nebraska Court of Appeals that it deems correct simply because its reasoning differs from that employed by the Court of Appeals.[50] While our reasoning differs from that employed by the Court of Appeals, our conclusion on the judgment is the same. We accordingly affirm.

Affirmed.

---

[50] *State v. Ratumaimuri*, 299 Neb. 887, 911 N.W.2d 270 (2018).