IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. FREEMAN


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

MITCHELL M. FREEMAN, APPELLANT.


Filed January 9, 2024.    No. A-22-738.


Appeal from the District Court for Lancaster County: KEVIN R. MCMANAMAN, Judge. Affirmed.

Carlos A. Monzon, of Monzon, Guerra & Chipman, for appellant.

Michael T. Hilgers, Attorney General, and Nathan A. Liss for appellee.


RIEDMANN, ARTERBURN, and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Following a jury trial, Mitchell M. Freeman was convicted of terroristic threats, possession of a firearm by a prohibited person, and use of a firearm to commit a felony. He has appealed, assigning as error that the district court erred in denying his *Franks* motion and that he received ineffective assistance of trial counsel. For the reasons stated herein, we affirm.

## II. STATEMENT OF FACTS

### 1. BACKGROUND

In September 2020, the State filed an information, which was later amended, charging Freeman with terroristic threats, possession of a firearm by a prohibited person, and use of a firearm to commit a felony. The State also added habitual criminal allegations to the information. Freeman's convictions stem from incidents occurring in January and February 2020.

### (a) January 2020 Incident

The first incident occurred on January 19, 2020. On that date, after receiving information regarding a weapons violation, Lincoln police officers contacted Shaneika Dancy Jones, who reported that she was carrying groceries from her car into her mother's house when she was approached by a man wearing a hoodie with an attached face mask. As he got closer, the man pulled down his hoodie and face mask, pointed a gun at her, and said "you know I could a' just did you in right there." Jones stated that she recognized Freeman's face and voice during the encounter. The encounter ended when Freeman fled the scene.

Jones reported that she first met Freeman in 2018 or 2019 when she got a tattoo from Freeman, who was a tattoo artist. She testified they dated briefly but kept in touch and would occasionally communicate through Facebook Messenger. Jones testified that, although she eventually blocked Freeman from messaging her, he created alternate accounts to contact her. After efforts to locate Freeman were unsuccessful, officers obtained an arrest warrant for him.

### (b) February 2020 Incident

On February 6, 2020, law enforcement received information that Freeman was staying at a specific apartment in Lincoln, Nebraska. Officers attempted to arrest Freeman when he exited the apartment building, but Freeman fled. A chase ensued, and during the pursuit, Senior Officer Chad Barrett witnessed Freeman reach toward his waistband, pull out a handgun, and toss the gun to the left just before entering the apartment complex's courtyard area. Investigators Cole Jennings and Daniel Dufek eventually tackled Freeman and handcuffed him. Barrett located the gun on a slab of cement to the left of the courtyard area. Although none of the officers were wearing body cameras, Barrett was able to recover surveillance video capturing Freeman's arrest from a nearby recreational center.

Following Freeman's arrest, officers interviewed Freeman and obtained a DNA sample from him. A DNA test of the handgun was performed. The DNA profile on the gun contained an 83/17 percent mixture of two individuals. Freeman's DNA profile was identified as the 83 percent contributor and was found to be 11.9 trillion more times likely to have come from Freeman and an unknown individual than to have come from two unknown individuals.

### 2. MOTION TO SUPPRESS AND REQUEST FOR *FRANKS* HEARING

In February 2020, officers sought and obtained a search warrant for two Facebook accounts associated with Freeman. During the search of the accounts, officers located Facebook messages exchanged between Freeman and Jones which showed that prior to the January 2020 incident, Freeman messaged Jones inquiring whether she was still living in the same place. Jones responded by telling Freeman to leave her alone and stay away from her house or she would file a report. Following the incident, Freeman messaged Jones again after Jones publicly posted about Freeman pointing a gun at her. In that exchange, Freeman indicated that he was not in Nebraska at the time of the incident and accused Jones of making up the incident.

Prior to trial, Freeman filed a motion for a *Franks* hearing regarding the affidavit submitted in support of the warrant to search his Facebook accounts. Freeman alleged that the affidavit erroneously stated he had been convicted of first degree murder; that the false statement was made

knowingly and intentionally or with reckless disregard for the truth; that the statement was material to the court's determination of probable cause; and that the statement was so prejudicial in nature it would be impossible for a court to separate the statement from the remainder of the facts alleged in the affidavit.

In denying Freeman's request for a *Franks* hearing, the court found that, although the aforementioned statement regarding Freeman's first degree murder conviction was false, the statement was not made knowingly or intentionally. However, the court found that the statement was made in reckless disregard of the truth, because the information reviewed by the officer contained an "obvious reason . . . [for the officer] to have serious doubts" concerning the veracity of Freeman's alleged first degree murder conviction and the officer's "failure to see and appreciate what was directly before him connotes a reckless state of mind." After excising the false statement and re-examining the affidavit, the district court stated:

> After examining the four corners of the warrant without the offending language, the court finds probable cause existed to issue the warrant and authorize [a] search of [Freeman's] Facebook account. The false information about the first-degree murder conviction added nothing to the probable cause analysis. The affidavit is replete with allegations that the officers were searching for social media communications between [Freeman] and three women who had made reports against him involving assaults and terroristic threats, two incidents of which reportedly also involved [Freeman] possessing a firearm.
>
> . . . .
>
> Excising and setting aside the untrue statement that [Freeman] had been convicted of first-degree murder, the warrant would still have been properly issued as there was probable cause, and the evidence would be pertinent as described more fully in the application. [Freeman] is therefore not entitled to a *Franks* hearing.

In addition to the aforementioned request for a *Franks* hearing, Freeman also filed a motion to suppress the search of his Facebook accounts. His motion to suppress alleged that the search warrant was invalid because the affidavit used in support thereof did not provide probable cause, was overly broad, and contained material falsehoods including that Freeman had previously been convicted of first degree murder. The district court denied this motion.

### 3. JURY TRIAL

A jury trial was held over 5 days in July 2022. Testimony was adduced from Jones and numerous officers and investigators. Testimony was adduced consistent with the facts as set forth above.

Freeman testified on his own behalf on July 14, 2022, but was unable to conclude his testimony on that date. The trial was adjourned and Freeman was to continue his testimony the following day. However, the following day, instead of testifying, Freeman informed the court that he was done testifying and that he wanted to return to Tecumseh due to the conditions at the Lancaster County Jail where he was being held during the trial. After finding that Freeman voluntarily, knowingly, and freely waived his right to testify and be present for the remainder of

the trial, the State requested that Freeman's testimony be stricken from the record and that the jury be instructed that Freeman's previous testimony could not be considered. The court granted the State's motion.

### 4. REQUEST FOR COMPETENCY EVALUATION

On that same date, Freeman's counsel made an oral motion for a competency evaluation of Freeman due to conditions in the county jail. Freeman's counsel further objected to the court's finding that Freeman's waiver of his right to testify and be present for the remainder of the trial was voluntary. After a discussion about the specific conditions at the jail that Freeman experienced, the district court found that Freeman was competent to stand trial and overruled the motion for a competency evaluation. Defense counsel moved for a mistrial which was denied by the district court.

### 5. VERDICT

Following the trial, the jury found Freeman guilty on all three charges. Following an enhancement hearing, the court found that Freeman was a habitual criminal. The court sentenced Freeman to 10 to 12 years' imprisonment for terroristic threats, 10 to 12 years' imprisonment for possession of a firearm by a prohibited person, and 10 to 14 years' imprisonment for use of a firearm to commit a felony. The sentences for terroristic threats and possession of a firearm were ordered to run concurrently with each other but consecutive to the sentence imposed for use of a firearm to commit a felony, resulting in an aggregate sentence of 20 to 26 years' imprisonment. Freeman now appeals from his convictions.

## III. ASSIGNMENTS OF ERROR

Freeman's assignments of error, restated, are that the district court erred in: (1) denying his *Franks* motion without an evidentiary hearing; and (2) failing to find that trial counsel was ineffective in failing to (a) investigate and present evidence at trial of his alibi defense; (b) present all of the impeachment evidence that Jones had three, not two, prior convictions for providing false information to law enforcement; and (c) conduct a contemporaneous investigation of whether Freeman was competent to discontinue his testimony due to jail conditions and counsel's failure to file a timely motion for a new trial pursuant to Neb. Rev. Stat. § 29-2101 (1), (2), or (3) (Reissue 2016).

We note that Freeman argues, but does not separately assign as error, that his trial counsel was ineffective for failing to object to the State's questioning and statements during closing arguments that Jones' convictions for providing false information concerned traffic matters. However, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court, and assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). Accordingly, we will not consider this argument on appeal.

## IV. STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Drake*, 311 Neb. 219, 971 N.W.2d 759 (2022). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *Id*.

We review the trial court's findings as to whether the affidavit supporting the warrant contained falsehoods or omissions and whether those were made intentionally or with reckless disregard for the truth for clear error. *State v. Short*, 310 Neb. 81, 964 N.W.2d 272 (2021). We review de novo the determination that any alleged falsehoods or omissions were not necessary to the probable cause finding. *Id*.

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Drake, supra*. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. Denial of *Franks* Motion Without Evidentiary Hearing

Freeman first assigns that the district court erred in failing to hold an evidentiary hearing on his *Franks* motion and then failing to suppress the evidence obtained from his Facebook page. He argues that the affidavit supporting law enforcement's request for a search warrant contained material falsities and omissions. More specifically, he argues that the affidavit contained a knowingly false statement that Freeman had been convicted of first degree murder, which improperly tainted the request for a search warrant.

In *State v. Short*, 310 Neb. at 124-26, 964 N.W.2d at 307-08, the Nebraska Supreme Court stated:

> In *Franks v. Delaware* [438 U.S. 154 (1978)], the U.S. Supreme Court explained, "'[W]hen the Fourth Amendment demands a factual showing sufficient to comprise "probable cause," the obvious assumption is that there will be a truthful showing.'" The Court clarified this "does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct." Rather, it recognized probable cause may be founded upon hearsay as well as "upon information within the affiant's own knowledge that sometimes must be garnered hastily." It concluded that "surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true."

In contrast, it would be "unthinkable" to allow a warrant to stand beyond impeachment if it were revealed after the fact to contain a "deliberately or reckless false statement." Thus, while there is a presumption of validity with respect to the affidavit supporting the search warrant, that presumption may be overcome and a search warrant may be invalidated if the defendant proves the affiant officer "'knowingly and intentionally, or with reckless disregard for the truth,'" included in the affidavit false or misleading statements that were necessary, or "material," to establishing probable cause.

Courts have extended the *Franks* rationale to omissions in warrant affidavits of material information. Omissions in an affidavit used to obtain a search warrant are considered to be misleading when the facts contained in the omitted material tend to weaken or damage the inferences which can logically be drawn from the facts as stated in the affidavit.

If the defendant successfully proves, by a preponderance of the evidence, that the police knowingly and intentionally, or with reckless disregard for the truth, included a false or misleading statement or omitted information material to a probable cause finding, then the court examines whether the evidence obtained from the warrant and search was fruit of the poisonous tree. In an "'excise and re-examine' corollary to the independent source rule," the trial court reexamines the affidavit after deleting the false or misleading statement and including the omitted information, and it determines whether, viewed under the totality of the circumstances, it still establishes probable cause. If it does not, then Franks requires that the search warrant be voided and the fruits of the search excluded.

Mere negligence in preparing the affidavit will not lead to suppression, as the purpose of the exclusionary rule is to deter misconduct. We review the trial court's findings as to whether the affidavit supporting the warrant contained falsehoods or omissions and whether those were made intentionally or with reckless disregard for the truth for clear error. We review de novo the determination that any alleged falsehoods or omissions were not necessary to the probable cause finding.

No hearing is required if, when the material which is the subject of the alleged falsity or reckless disregard is set aside, there remains sufficient content in the warrant affidavit to support a finding of probable cause. *State v. Hernandez*, 268 Neb. 934, 689 N.W.2d 579 (2004).

Here, the district court found that although the statement that Freeman had previously been convicted of first degree murder was false, Officer Dufek did not make the false statement knowingly or intentionally. However, the court found that there was an "obvious reason on the very paper he examined to have serious doubts about the conclusion he reached" and found that Officer Dufek's "failure to see and appreciate what was directly before him connotes a reckless state of mind in then making the assertion, which the court does so find." After excising the false statement and reexamining the affidavit, the district court determined that, even without the offending language, probable cause existed to authorize the search of Freeman's Facebook account. The court noted that the false information regarding Freeman's alleged first degree murder conviction did not add anything to the court's probable cause analysis. Further, the affidavit contained numerous allegations that law enforcement was searching for social media

communications between Freeman and the three women who had reported him for assaults and terroristic threats of which two incidents involved Freeman's possession of a firearm.

Based on our review of the record, the affidavit in support of the search warrant contained details of the following: three separate, recent incidents involving three different victims in which Freeman either physically assaulted, or pointed a handgun at, the victims; Freeman's flight from officers as they attempted to execute an arrest warrant during which Freeman tossed his handgun before being tackled to the ground and placed in custody; an interview with Freeman after his arrest wherein he admitted to having Facebook Messenger conversations with two of the victims and admitted that one conversation with Jones involved a discussion of the incident where Freeman pointed a gun at her; and law enforcement's discovery of two of Freeman's Facebook accounts, which contained recent "open source" postings and updates demonstrating recent activity as well as photographs matching Freeman's jail booking photos and jail photos of his tattoos.

Based on our review of the affidavit, assuming without deciding that the erroneous statement regarding Freeman having been previously convicted of first degree murder was made with reckless disregard for its truth, we agree with the district court that after excising that language, the affidavit still contained sufficient factual allegations providing probable cause to support issuance of the search warrant. When reviewing the totality of the circumstances, the allegations of the recent incidents of assault and threats with a handgun, which gun was later found when Freeman tossed it while fleeing from police, along with Freeman's acknowledgments that he used Facebook to communicate with Jones, provided probable cause to search his Facebook accounts. We also note that Freeman does not address the impact of excising the erroneous statement in his brief.

In sum, because Freeman cannot show that the erroneous statement regarding a prior conviction for first degree murder was necessary or material to establishing probable cause, and that probable cause still existed even after excising that statement from the affidavit, an evidentiary hearing was not required. Because the affidavit, when excised of the erroneous statement, supported a finding of probable cause to issue the warrant, and the subsequent search of Freeman's Facebook account was executed under a valid search warrant, the district court did not err in refusing to suppress the evidence seized during the search. This assignment of error fails.

## 2. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Freeman next assigns that he received ineffective assistance of counsel during trial when his counsel failed to: (a) investigate and present evidence at trial of Freeman's alibi that he was not in Nebraska at the time of the January 2020 offenses; (b) present all of the impeachment evidence, i.e., that Jones had three, not two, prior convictions for providing false information to law enforcement; and (c) conduct a contemporaneous investigation of whether Freeman was competent to discontinue his testimony due to the jail conditions and failed to file a timely motion for a new trial pursuant to § 29-2101 (1), (2), or (3).

In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Wheeler*, 314 Neb.

282, 989 N.W.2d 728 (2023). The record is sufficient to resolve on direct appeal a claim of ineffective assistance of counsel if the record affirmatively proves or rebuts either deficiency or prejudice with respect to the defendant's claims. *Id.*

To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

### (a) Investigate and Present Evidence of Alibi

Freeman argues that although trial counsel filed a notice of alibi and questioned Freeman regarding his location at the time of the offenses, counsel should have investigated whether cell tower data, internet connections, other social media platforms, or video surveillance at a gas station, bar, or Walmart existed to show that he was in Texas at the time of the alleged January 2020 offenses of terroristic threats and possession of a firearm by a prohibited person.

In March 2022, Freeman's counsel filed a notice of his intent to present an alibi defense at trial. However, the record is devoid of evidence as to whether counsel investigated or obtained any records which would indicate that Freeman was not in Nebraska during the time of the alleged January 2020 incident. Further, there is nothing in the record to explain why counsel chose not to introduce those records if they did in fact exist. As such, we lack the record to determine this issue on direct appeal and the allegation is preserved for postconviction purposes. See, *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021); *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020).

### (b) Impeachment of Jones

Freeman next assigns and argues that trial counsel was ineffective in failing to present impeachment evidence of Jones' 2012 conviction for providing false information to law enforcement. Freeman argues that, following Jones' conviction, on June 21, 2012, she was sentenced to pay a $200 fine. Freeman contends that because Jones did not pay the fine until August 20, 2012, the conviction was still subject to impeachment at the time of her trial testimony on July 12, 2022.

Neb. Rev. Stat. § 27-609 (Reissue 2016) provides in relevant part:

> (1) For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination, but only if the crime (a) was punishable by death or imprisonment in excess of one year under the law under which he was convicted or (b) involved dishonesty or false statement regardless of the punishment.
>
> (2) *Evidence of a conviction under this rule is not admissible if a period of more than ten years* has elapsed since the date of such conviction or of the release of the witness from confinement, whichever is the later date.

(Emphasis supplied.)

At the time of Jones' trial testimony on July 12, 2022, more than 10 years had passed since Jones' conviction on June 21, 2012. Jones was not sentenced to confinement and Freeman does not point to any authority which would otherwise extend the 10-year rule. It is well-settled that "counsel's failure to raise novel legal theories or arguments or to make novel constitutional challenges in order to bring a change in existing law does not constitute deficient performance." *State v. Kipple*, 310 Neb. 654, 667, 968 N.W.2d 613, 625 (2022). Freeman's counsel cannot be deficient for failing to elicit evidence of Jones' third conviction. This assignment of error fails.

(c) Investigation Into Competency to Discontinue Testimony

Finally, Freeman assigns that his trial counsel was ineffective in failing to conduct a contemporaneous or prompt investigation into whether Freeman was competent to discontinue his testimony because of jail conditions and then failing to file a motion for a new trial pursuant to § 29-2101(1), (2), or (3) based on the evidence. Freeman asserts that his counsel moved for a competency examination when Freeman was called back to resume his testimony. Freeman argues that he informed counsel that he was being mistreated, was placed in a suicide cell, could not sleep, and was in his own feces, but that his counsel did not present this information to the district court during trial or in a timely motion for a new trial. We find that Freeman's claim is refuted by the record.

In order to demonstrate prejudice from counsel's failure to investigate competency and for failing to seek a competency hearing, the defendant must demonstrate that there is a reasonable probability that he or she was, in fact, incompetent and that the trial court would have found him or her incompetent had a competency hearing been conducted. *State v. Hessler*, 295 Neb. 70, 886 N.W.2d 280 (2016). A person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense. *Id.* The competency standard includes both (1) whether the defendant has a rational as well as factual understanding of the proceedings against him or her and (2) whether the defendant has sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding. *State v. Garcia*, 315 Neb. 74, 994 N.W.2d 610 (2023). There are no fixed or immutable signs of incompetence, and a defendant can meet the modest aim of legal competency, despite paranoia, emotional disorders, unstable mental conditions, and suicidal tendencies. *Id.*

Here, after counsel informed the court during the trial that Freeman did not want to continue testifying due to the conditions at the jail, the court accepted Freeman's voluntary waivers of his right to testify and to be present for the remainder of the trial. Trial counsel then requested that Freeman be given the opportunity to describe his experiences in the jail as it related to the voluntariness of his waiver. Freeman's counsel indicated that she had concerns related to Freeman's mental state and that, but for the jail conditions, Freeman would not be in his current mental state.

After objecting to the court's finding that Freeman freely, voluntarily, and knowingly waived his right to testify, the court afforded Freeman the opportunity to address the jail conditions that he had experienced. Freeman stated that he had not slept; he was placed in a suicide cell dressed solely in his boxers; he was not fed; he was not provided with toilet paper, had to use a

little hole in the floor to go to the bathroom, had to use the smock he was wearing to wipe himself, and had to scoop what missed the hole with his hands; he became upset and threw some of his feces; he had to sleep in the room all night covered in his own feces; he was only able to shower an hour and a half prior to returning to court; he felt that the county jail was punishing him; and he wanted to return to Tecumseh where "they treat you with some type of dignity."

Thereafter, Freeman's counsel made an oral motion with regard to a competency evaluation which the district court denied. Counsel then moved for a mistrial which the court also denied, finding that "[Freeman] cannot cause his own mistrial" and "there's no question that [Freeman] appears competent to the Court at this time." Further, the court found that Freeman chose not to participate in the remainder of the trial and that the court was not preventing Freeman from participating in the trial, but rather it was Freeman's decision not to participate.

Freeman's specific assignment here is that his counsel was ineffective for failing to investigate his competency following Freeman's disclosures to the court governing his treatment at the jail the previous night and then failing to file a motion for a new trial. However, the record discloses that once Freeman described the jail conditions that he experienced, counsel did move for a competency hearing, but the court overruled this request and proceeded with trial.

As the Nebraska Supreme Court noted in *State v. Vo*, 279 Neb. 964, 783 N.W.2d 416 (2010), a competency determination is necessary only when a court has reason to doubt the defendant's competence. The trigger for a competency hearing under Nebraska law has been set forth as follows:

> If at any time while criminal proceedings are pending facts are brought to the attention of the court, either from its own observation or from suggestion of counsel, which raise a doubt as to the sanity of the defendant, the question should be settled before further steps are taken. However, although a hearing on the issue is sometimes said to be obligatory, if a reasonable doubt is raised, the doubt referred to is a doubt arising in the mind of the trial judge, as distinguished from uncertainty in the mind of any other person.

*State v. Cortez*, 191 Neb. 800, 802, 218 N.W.2d 217, 219 (1974).

Here, once Freeman relayed his concerns governing his treatment at the jail the previous night, all such conditions were brought to the court's attention. And, although Freeman's counsel requested a competency hearing, the court had the opportunity to observe Freeman at that time and throughout the proceedings prior to denying the request. Freeman does not separately assign error to the district court's ruling that he was competent, nor does he argue how or why his counsel was ineffective for failing to file a motion for new trial under these circumstances.

Because trial counsel brought the issue of Freeman's competency to the court's attention and requested a competency hearing after which Freeman was able to describe his concerns to the court, we find that the record affirmatively refutes this assignment. This claim fails and the issue is not preserved for postconviction proceedings.

## VI. CONCLUSION

In sum, we considered and rejected Freeman's assigned errors with the exception of his claim that trial counsel was ineffective in failing to investigate and obtain evidence related to his

alibi defense because the record on direct appeal was insufficient to address that claim. Only that claim is preserved for postconviction. Accordingly, we affirm Freeman's convictions and sentences.

AFFIRMED.