IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)


STATE V. STARKEY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

NATASHA L. STARKEY, APPELLANT.


Filed February 24, 2026.    No. A-25-411.


Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

F. Matthew Aerni, of Liberty Law Group, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.


RIEDMANN, Chief Judge, and PIRTLE and FREEMAN, Judges.

FREEMAN, Judge.

### INTRODUCTION

Natasha L. Starkey appeals her jury conviction in the district court for Lancaster County for possession of a controlled substance. This case arises after methamphetamine was found on Starkey's person while she was attempting to visit an incarcerated inmate. On appeal, Starkey assigns that the district court erred in overruling Starkey's objections to evidence regarding the nature of the inmate's conviction and evidence suggesting she intended to distribute methamphetamine to that inmate. She also asserts that the district court erred by denying her motion to suppress physical evidence obtained during a warrantless search after she withdrew her consent to search. For the reasons set forth below, we affirm.

### BACKGROUND

On December 9, 2023, Starkey entered the Nebraska State Penitentiary (NSPen) in Lincoln, Nebraska, to visit an inmate. Upon entry, Corporal Jessica Rhoades conducted a pat search.

- 1 -

Starkey was instructed to empty her pockets and produced a small "Ziplock" bag from her right pants pocket. Rhoades seized the bag, which field-tested positive for methamphetamine, and Starkey left the facility.

Several days later, an investigator with the Nebraska State Patrol submitted the bag's contents to the Nebraska State Patrol Crime Laboratory for testing. In February 2024, the laboratory confirmed the substance was methamphetamine, weighing 0.6 grams. An arrest warrant was issued on April 15, and Starkey was arrested on April 22. In August, the State charged Starkey by information with possession of a controlled substance in violation of Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2024), a Class IV felony.

MOTION TO SUPPRESS

In October 2024, Starkey moved to suppress all evidence obtained from the pat search at NSPen. The motion argued that the seizure lacked probable cause, was unreasonable, and violated her fourth amendment rights, rendering all derivative evidence inadmissible as "fruit of the poisonous tree."

The district court held a suppression hearing in February 2025. The State called Rhoades, who testified regarding NSPen's visitor procedures. Rhoades explained that visitors must sign in, secure personal belongings in a locker, submit remaining items for screening, and undergo a pat-down search in a private room. The pat search serves to prevent contraband, such as drugs, cell phones, and paper, from entering the facility. Refusal results in denial of visitation.

Rhoades testified that she conducted Starkey's pat search while working as a "pass clerk." During the search, Starkey voluntarily entered the pat search room. When instructed to pull out her front pockets, Rhoades observed Starkey holding a little plastic "baggie" in her right hand. According to Rhoades, Starkey attempted to return the baggie to her right pocket, at which point Rhoades seized it. Rhoades testified that Starkey appeared to be trying to conceal the baggie. Upon seizure, Rhoades described the contents as "dirty rocks." Rhoades contacted her lieutenant, but Starkey collected her belongings and left NSPen. Rhoades authored an incident report and secured the baggie in an evidence locker.

The State argued that the unique context of the prison facility permits searches and seizures without individualized suspicion and that Starkey, consequently, had a diminished expectation of privacy. Starkey countered that she revoked consent to a search by attempting to put the baggie back in her pocket, rendering the seizure unlawful. The district court found that Starkey consented to the search and confirmed that Rhoades had authority to seize the baggie. The court overruled the motion to suppress.

JURY TRIAL

A 2-day jury trial took place in March 2025. The State again called Rhoades, whose testimony was consistent with her suppression hearing testimony. The State offered Rhoades' written incident report and video footage of the December 9, 2023 encounter, excluding the private pat-down, into evidence. Trial testimony established an unbroken chain of custody for the seized baggie, which was secured, transferred, tested, and confirmed by the Nebraska State Patrol Crime Laboratory to contain methamphetamine. The baggie was admitted into evidence. Starkey did not object to the admission of the video or the baggie.

Starkey testified in her own defense. Starkey stated that she started using methamphetamine at age 23 and experienced periods of relapse, including in late November or early December 2023. She testified that she stopped using after law enforcement searched her home on December 4 but acknowledged that she did not seek treatment until after the incident at NSPen on December 9.

On December 9, 2023, Starkey drove approximately 4 hours from Iowa to NSPen to visit an inmate. She had previously visited the inmate at a Reception and Treatment Center but had not visited the inmate at NSPen. Based on prior visits to other secure facilities, Starkey expected to undergo a pat search at NSPen.

Starkey testified that she first noticed the baggie when instructed to scoop her front coin pocket during the pat search. She claimed she was unaware the baggie was in her pocket before that moment and did not recognize the baggie as containing methamphetamine. Starkey testified that she recently purchased the jeans secondhand and believed the baggie may have been in the pocket at the time of purchase, or that she placed it there during a period of use and forgot it was present. Starkey denied attempting to conceal the baggie and testified she told Rhoades she did not know what the item was. Starkey stated she left the facility because she felt as though she was not "getting a response. And it was shift change, and there was just too many people coming. So, I exited the building, and I told them that if they needed to, they could call me." Starkey contacted the facility 30 minutes later, at which point she was informed that her visit had been canceled.

On cross-examination, the State asked Starkey if the inmate she intended to visit was incarcerated for the offense of possession with intent to distribute methamphetamine. Starkey objected to the question, claiming it was irrelevant and constituted "404 material." The district court overruled the objections on both grounds, and Starkey confirmed the inmate's conviction.

During closing argument, the State challenged Starkey's credibility and stated to the jury, "There is a reasonable inference to make that the reason that she went into the penitentiary with methamphetamine was to give it to [the inmate]. Someone who is incarcerated for a methamphetamine crime." Starkey objected, claiming improper 404 material. The district court overruled the objection and submitted the case to the jury.

### VERDICT AND SENTENCING

The jury found Starkey guilty of one count of possession of a controlled substance, a Class IV felony. The district court accepted that verdict and ordered a presentence investigation report. In April 2025, the court sentenced Starkey to a term of 2 years' imprisonment, to run consecutively to any other sentence she was then serving.

### ASSIGNMENTS OF ERROR

Starkey assigns, restated, that the district court erred in (1) overruling evidence of the inmate's reason for imprisonment and admitting circumstantial evidence and (2) denying her motion to suppress physical evidence.

## STANDARD OF REVIEW

A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. *State v. Price*, 320 Neb. 1, 26 N.W.3d 70 (2025).

A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

## ANALYSIS

### ADMISSION OF EVIDENCE OF INMATE CONVICTION

Starkey argues the district court erred in overruling her objection to the State's inquiry into the reason the inmate she was visiting was incarcerated. At trial, the State asked whether "[Inmate] is incarcerated for the offense of possession with intent to distribute methamphetamine." Starkey claims this information was irrelevant to whether she knowingly possessed methamphetamine and constituted inadmissible other acts evidence under Neb. Rev. Stat. § 27-404(2) (Cum. Supp. 2024). Starkey further argues that the district court erred in allowing the State to introduce and rely upon circumstantial evidence suggesting she intended to distribute methamphetamine to the inmate.

Under Neb. Rev. Stat. § 27-401 (Cum. Supp. 2024), "[r]elevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The bar for establishing evidentiary relevance is not a high one; it requires only that the probative value of the evidence be something more than nothing. *State v. Price, supra.* The State is allowed to present a coherent picture of the facts of the crimes charged, and it may generally choose its evidence in so doing. *Id.* Evidence is relevant if it tends in any degree to alter the probability of a material fact. *Id.* Neb. Rev. Stat. § 27-403 (Cum. Supp. 2024) allows the exclusion of evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *State v. Price, supra.* Unfair prejudice speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged, commonly on an emotional basis. *Id.* When considering whether evidence of other acts is unfairly prejudicial, courts consider whether the evidence tends to make conviction of the defendant more probable for an incorrect reason. *Id.*

Section 27-404(2) operates as an inclusionary rule of evidence. See *State v. Wheeler*, 314 Neb. 282, 989 N.W.2d 728 (2023). It provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. See § 27-404(2). It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.*

Here, the reason for the inmate's incarceration was relevant to Starkey's knowledge and intent, both of which are elements of the charged offense. Section 28-416(3) states in relevant part, "a person knowingly or intentionally possessing a controlled substance . . . shall be guilty of a Class IV felony." In the context of a criminal statute, "intentionally" means willfully or purposely,

and not accidentally or involuntarily. *State v. Erpelding*, 292 Neb. 351, 874 N.W.2d 265 (2015). "Knowingly" means "willfully" as distinguished from "accidentally or involuntarily." See *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998). In other words, to commit an act knowingly, the defendant must be aware of what he or she is doing. *Id.* A person possesses a controlled substance when he or she knows of the nature or character of the substance and of its presence and has dominion or control over it. *State v. Rocha*, 295 Neb. 716, 890 N.W.2d 178 (2017).

Starkey was found in actual possession of methamphetamine while entering a state penitentiary to visit an inmate convicted of possession with intent to distribute that same substance. The inmate's conviction provided context from which a jury could reasonably deduce that Starkey's possession was knowing and purposeful rather than accidental or inadvertent. The jury made an implicit credibility finding when it found Starkey guilty of possession of a controlled substance (methamphetamine). The evidence here did not invite the jury to convict Starkey based on the inmate's criminal history but served a legitimate probative purpose tied directly to Starkey's mental state and conduct.

Moreover, § 27-404(2) governs the admissibility of evidence of a defendant's other crime, wrongs, or acts. Evidence is not an "other act" when it only tends to logically prove an element of the crime charged. See *State v. Wheeler, supra (*quoting *State v. Freemont*, 284 Neb. 179, 817 N.W.2d 277 (2012) (Cassel, Judge, concurring)). The charged offense required proof that Starkey knowingly or intentionally possessed the controlled substance. Evidence of the inmate's history of methamphetamine distribution provided context supporting the presumption that Starkey knowingly possessed methamphetamine because she intended to deliver it to the inmate.

Further, Starkey's claim that the State improperly introduced circumstantial evidence of intent to distribute is refuted by the record. Starkey challenges the State's comment that it was a "reasonable inference that [Starkey] was at [NSPen] to distribute [methamphetamine] to the [inmate]." However, this statement initially arose during a sidebar argument and was not meant to be heard by the jury. Thus, it did not constitute evidence.

Likewise, the State's closing argument, implicating the same inference, did not constitute evidence. While the jury was instructed that the lawyers were permitted to argue legitimate inferences from the evidence, it was further instructed that the arguments of counsel were not evidence and thus not to be used when determining the facts. And a jury is presumed to follow its instructions. *State v. Corral*, 318 Neb. 940, 20 N.W.3d 372 (2025).

Accordingly, the district court did not abuse its discretion in overruling Starkey's objection, and the admission of evidence regarding the inmate's reason for incarceration was proper. Furthermore, the challenged statements did not constitute evidence. This assignment fails.

MOTION TO SUPPRESS

Starkey next argues that the district court erred in denying her motion to suppress, claiming she unequivocally withdrew consent to the pat search. Starkey asserts that once consent was revoked, the warrantless search became unreasonable and that no probable cause existed to justify its continuation. We decline to review this assigned error.

When a motion to suppress is overruled, the defendant must make a specific objection at trial to the offer of the evidence which was the subject of the motion to suppress to preserve the issue for review on appeal. *State v. Cox*, 307 Neb. 762, 985 N.W.2d 395 (2020). Put another way,

a failure to object to evidence at trial, even though the evidence was the subject of a previous motion to suppress, waives the objection, and a party will not be heard to complain of the alleged error on appeal. *Id*.

Because Starkey did not object at trial to the evidence that was the subject of the motion to suppress, she waived any right to assert error. We conclude that Starkey failed to preserve the question of admissibility for appellate review.

## CONCLUSION

For the reasons stated above, we conclude that the district court correctly overruled Starkey's objections. We further find that Starkey's motion to suppress was not preserved for review. Therefore, we affirm the district court's order.

AFFIRMED.